# Exhibit 1

ELECTRONICALLY FILED
5/26/2021 4:56 PM
02-CV-2021-900918.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev. 9/18 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case<br>02<br><br>Date of Filing:<br>05/26/2021 | Judge Code: |

## GENERAL INFORMATION

### IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

### KVK TECH, INC. v. NAVIGATORS SPECIALTY INSURANCE COMPANY

**First Plaintiff:** ☑ Business ☐ Individual  **First Defendant:** ☑ Business ☐ Individual
☐ Government ☐ Other  ☐ Government ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Service

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/ Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☑ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/ Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ EPFA - Elder Protection From Abuse
- ☐ QTLB - Quiet Title Land Bank
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:**  F ☑ INITIAL FILING   A ☐ APPEAL FROM DISTRICT COURT   O ☐ OTHER

 R ☐ REMANDED   T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☐ YES ☑ NO   Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:**  ☑ MONETARY AWARD REQUESTED  ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**

HEL014   5/26/2021 4:56:29 PM   /s/ FREDERICK GEORGE HELMSIN
‾‾‾‾‾‾‾‾   ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾   ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
   Date   Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:**   ☐ YES ☑ NO ☐ UNDECIDED

**Election to Proceed under the Alabama Rules for Expedited Civil Actions:**   ☐ YES ☐ NO

DOCUMENT 2

ELECTRONICALLY FILED
5/26/2021 4:56 PM
02-CV-2021-900918.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

## IN THE CIRCUIT COURT OF MOBILE COUNTY ALABAMA

| | |
|---|---|
| **KVK-TECH, INC,** | |
| **Plaintiff,** | |
| **v.** | **Case No.:** |
| **NAVIGATORS SPECIALTY INSURANCE COMPANY.** | |
| **Defendant.** | |

## COMPLAINT

COMES NOW, Plaintiff, KVK-Tech, Inc. ("KVK-Tech") and for its Complaint against Defendant Navigators Specialty Insurance Company ("Navigators") alleges as follows:

### PARTIES

1.     Plaintiff KVK-Tech is a corporation organized under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania.

2.     Upon information and belief, Defendant Navigators is a corporation organized under the laws of the State of Delaware with its principal place of business in New York.

### FACTS

3.     KVK-Tech manufactures, sells and distributes generic prescription medications, including various prescription opioids medications.

4.     Navigators issued an excess insurance policy to KVK-Tech, Policy Number PH16LEX0BECP4NC, effective for the period July 22, 2016 through August 21, 2017 (the "Navigators Policy"). The Navigators Policy is a Form Follows excess insurance policy. A copy

of the Navigators Policy is attached as Exhibit A and incorporated by reference.

5.      The Navigators Policy provides:

1.  Insuring Agreement

A.  Excess Liability

1.  Subject to the applicable limits of insurance, we will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages in excess of **underlying limits**, for **loss** to which this insurance applies.  This insurance applies only if:

    a.      the **loss** is caused by an occurrence that takes place in the coverage **territory**;

    b.      the **loss** did not occur before the Retroactive Date, if any, shown in the Declarations, or after the end of the **policy period**;

    c.      the **controlling underlying insurance** applies to the **loss**;

    d.      all **underlying insurance** has been exhausted by payment of the limits of such insurance by the underlying insurer or payment of an amount equivalent to the limits of the **underlying insurance** by the underlying insurer and/or you;

    e.      a claim for damages because of the **loss** is first made against the insured during the **policy period** or any applicable Extended Reporting Period we provide; and

    f.      if the **controlling underlying insurance** so requires, the claim for damages because of loss is reported to us during the **policy period** or any applicable Extended Reporting Period we provide.

6.      During the same policy period covered by the Navigators policy (July 22, 2016 through August 21, 2017), KVK-Tech had a primary insurance policy issued by Ironshore Insurance Services, LLC, Policy Number 00286200 (the "Ironshore Policy").  A copy of the Insurance Policy is attached as Exhibit B and incorporated by reference.  The Ironshore Policy has an aggregate limit of $15,000,000.

7.      The Ironshore Policy provides:

A.      **PRODUCTS/COMPLETED  OPERATIONS  BODILY  INJURY  AND**

## PROPERTY DAMAGE LIABILITY INSURANCE

We will pay **Damages** that the Insured becomes legally obligated to pay because of a **Claim** alleging **Bodily Injury** or **Property Damage** caused by an **Occurrence**, provided that:

1.   the **Bodily Injury** or **Property Damage** is included within the **Products-Completed Operations Hazard** to which this insurance applies;

2.   the **Bodily Injury** or **Property Damage** takes place on or after the Retroactive Date and prior to the expiration date of the **Policy Period**;

3.   the **Occurrence** takes place in the **Coverage Territory**; and

4.   the Claim was first made against the **Insured** during the **Policy Period** or any applicable Extended Reporting Period, and was reported to us as required by SECTION V, Condition A.  A **Claim** will be deemed first made as set forth in SECTION V, Condition B.

8.      KVK-Tech has been named as a Defendant in hundreds of lawsuits alleging claims related to prescription opioid medications, among other things.  One of these lawsuit is pending in the Circuit Court of Mobile County, *The Estate of Bruce Brockel v. John Patrick Couch, et al.*, Case Number: 02-CV-2017-902787.

9.      Navigators also issued a Following Form Excess Liability Policy to KVK-Tech, Policy Number BO17LEX0BECP4NV, for the policy period August 21, 2017 through August 21, 2018 (the "2017 Navigators Policy") which provides

1.  Insuring Agreement

A.  Excess Liability

1.  Subject to the applicable limits of insurance, we will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages in excess of **underlying limits**, for **loss** to which this insurance applies.  This insurance applies only if:

a.   the **loss** is caused by an occurrence that takes place in the coverage **territory**;

b.   the **loss** did not occur before the Retroactive Date, if any, shown in the Declarations, or after the end of the **policy period**;

c.  the **controlling underlying insurance** applies to the **loss**;

d.  all **underlying insurance** has been exhausted by payment of the limits of such insurance by the underlying insurer or payment of an amount equivalent to the limits of the **underlying insurance** by the underlying insurer and/or you;

e.  a claim for damages because of the **loss** is first made against the insured during the **policy period** or any applicable Extended Reporting Period we provide; and

f.  if the **controlling underlying insurance** so requires, the claim for damages because of loss is reported to us during the **policy period** or any applicable Extended Reporting Period we provide.

A copy of the 2017 Navigators Policy is attached as Exhibit C and incorporated by reference.

10.    The first opioid lawsuit naming KVK-Tech as a defendant was filed on August 17, 2017.  That case, *Sandra Hughes v. Mallinkrodt, et al*.  (the *"Hughes* Lawsuit"), was filed in the Twenty-Second Judicial Circuit Court of St. Louis, Missouri.

11.    KVK-Tech was served in the *Hughes* Lawsuit on August 31, 2017.

12.    Following notice of the *Hughes* Lawsuit, Ironshore elected to treat all claims against KVK-Tech related to opioids as a single batch occurrence under the Ironshore Policy.

13.    Ironshore has provided coverage to KVK-Tech for the opioid prescription medication claims pursuant to the Ironshore Policy.  To date, Ironshore has provided a defense to KVK-Tech for all claims asserted including prescription opioid medications.

14.    KVK-Tech has demanded coverage from Navigators pursuant to the Navigators Policy for claims asserted against it including prescription opioid medications.

15.    On January 27, 2020, KVK-Tech wrote to Navigators demanding coverage under the Navigators Policy for all prescription opioid medication related claims asserted against it.

16.    On December 30, 2020, Navigators responded to Mr. Tabasso and denied coverage for the claims asserted against KVK-Tech.  In its letter, Navigators claimed that it was not provided

with notice of the opioid related claims against KVK-Tech in accordance with the provisions of the Navigators Policy. Navigators does not provide any other basis for the denial of coverage.

17.     Navigators based its denial of coverage on the following language contained in the Navigators Policy.  "If the **controlling underlying insurance** so requires, the claim for damages because of a **loss** reported to us during the **policy period** or any applicable Extended Reporting Period we provide."  Navigators contends that this language requires KVK-Tech to provide notice of the *Hughes* Lawsuit under the Navigators Policy no later than September 20, 2017.

18.     On February 16, 2021, KVK-Tech again wrote to Navigators demanding coverage under the Navigators Policy.

19.     On March 4, 2021, Navigators again denied coverage on the basis of claimed untimely notice.  Navigators contends that because the Ironshore Policy required notice be provided to Ironshore within a certain time, those provisions apply to the Navigators policy as well.

20.     The denial of coverage under the Navigator's Policy will cause substantial injury to KVK-Tech.

## COUNT ONE-DECLARATORY JUDGMENT

21.     KVK-Tech adopts its allegations contained in the proceeding Plaintiffs as if set forth fully herein.

22.     The Navigators Policy[1] provides insurance coverage to KVK-Tech for claims related to the manufacture, sale and distribution of prescription opioid medications.  It is a valid

---

[1] Alternatively, the 2017 Navigators Policy provides coverage to KVK-Tech for the claims asserted against it relating to prescription opioid medications.

enforceable contract between KVK-Tech and Navigators.

23.     KVK-Tech has demanded coverage under the Navigators Policy for the claims made against it relating to prescription opioid medications.  KVK-Tech is entitled to coverage under the Navigators Policy.

24.     Navigators has denied coverage to KVK-Tech under the Navigators Policy for the claims asserted against it relating to prescription opioid medications.

25.     A present controversy exists between KVK-Tech and Navigators as to coverage for prescription opioid medications.  Accordingly, there is a bona fide, actual, present practical need for a declaration that, under the terms of the Navigator Policy, KVK-Tech is entitled to coverage for the claims asserted against it.  KVK-Tech is entitled to a declaratory judgment that coverage exists under the Navigators Policy for the claims asserted against it relating to the manufacture, sale and distribution of prescription opioid medications.

26.     KVK-Tech and Navigators have an actual, present, adverse, and antagonistic interest in the subject matter.  The adverse and antagonistic interests are before the Court by proper process.  Moreover, the relief sought is not merely the giving of legal advice or the answer to questions propounded for curiosity.

27.     KVK-Tech, therefore, demands the following relief pursuant to Ala. Code §§ 6-6-220, *et. seq.,* and the Court's equitable powers, in addition to any other relief the Court deems just and proper:

(a)  An order declaring that KVK-Tech is entitled to coverage under the Navigators Policy.

(b)  An order declaring that, under the terms of the Navigators Policy is obligated to immediately defend KVK-Tech in accordance with all policy provisions.

WHEREFORE, KVK-Tech respectfully requests this Court enter an Order finding that coverage exists under the Navigators Policy for all claims involving prescription opioid medications asserted against it.

## COUNT TWO-BREACH OF CONTRACT

28.     KVK-Tech adopts its allegations contained in the proceeding Plaintiffs as if set forth fully herein.

29.     KVK-Tech is covered under the Navigators Policy[2] for claims made against it in connection with prescription opioid medications.

30.     Navigators wrongfully denied coverage to KVK-Tech.

31.     The denial of coverage by Navigators is a breach of the Navigators Policy.

32.     KVK-Tech has suffered damages as a direct and proximate result of Navigators breach of the insurance policy.

WHEREFORE, KVK-Tech demands judgment against Navigators for an amount in excess of the jurisdictional minimums of this Court and for all such other relief to which it may be entitled.

Dated:  May 26, 2021                          Respectfully submitted,

*/s/ Frederick G. Helmsing, Jr.*
Frederick G. Helmsing, Jr. (HELMF3421)
Archibald T. Reeves, IV
McDowell Knight Roedder & Sledge LLC
P.O. Box 350
Mobile, AL 36601
251.432.5300
fhelmsing@mcdowellknight.com
areeves@mcdowellknight.com

---

[2] Alternatively, the 2017 Navigators Policy provides coverage to KVK-Tech for the claims asserted against it relating to prescription opioid medications.

## <u>CERTIFICATE OF SERVICE</u>

Defendant Navigators Specialty Insurance Company to be served via certified mail on it designated agent for service of process:

CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104

ELECTRONICALLY FILED
5/26/2021 4:56 PM
02-CV-2021-900918.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK



# NAVIGATORS SPECIALTY INSURANCE COMPANY

THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE BASIS.
PLEASE READ THE ENTIRE POLICY CAREFULLY.

## DECLARATIONS

Attaching to and forming part of

## FOLLOWING FORM EXCESS LIABILITY POLICY

IN RETURN FOR THE PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

Policy Number:              PH16LEX0BECP4NC

Producer Number:           WILL7062

Renewal of Policy Number:   N/A

Insuring Company:    Navigators Specialty Insurance Company    Producer:  Willis of Pennsylvania, Inc.
                     One Penn Plaza                                       100 Matsonford Road, Bldg 5, Ste 200
                     New York, NY 10119                                   Radnor, PA 19087

1.    Named Insured:    KVK Tech Inc.
      Address:          110 Terry Drive, Suite 200
                        Newtown, PA 18940

2.    Policy Period:    From 07/22/2016 To 08/21/2017,
                        12:01AM STANDARD TIME AT THE ADDRESS SHOWN IN NUMBER 1 ABOVE.

3.    Limits of Insurance:    $5,000,000 Each Occurrence - including Claims Expenses.
                              $5,000,000 Aggregate – including Claims Expenses.

<u>**Exhibit "A"**</u>



4.      Schedule of Underlying Insurance:

Controlling Underlying Insurance

| Coverage | Carrier | Policy Term | Retroactive Date | Limits |
|---|---|---|---|---|
| Products – Completed Operations Liability | Ironshore Specialty Insurance Company<br><br>Policy # 002862800 | 07/22/2016 to 08/21/2017 | 02/01/2007: $5m<br><br>08/21/2009: $5m xs $5m<br><br>08/21/2012: $5m xs $10m | $15,000,000 Each Occurrence/$15,000,000 Aggregate<br><br>Deductible: $100,000 Each Occurrence/$500,000 Aggregate |

Total Underlying Limits:          $15,000,000 each occurrence / $15,000,000 aggregate, excess of retention

5.      Premium:              $54,100 Policy Term Premium, subject to the greater of 25% Minimum Earned or Minimum Policy Premium

$25,000 Minimum Policy Premium
(Any acquisitions during the policy period will be subject to additional underwriting consideration and additional premium)

6.      Retroactive Date:     08/21/2012

THIS INSURANCE DOES NOT APPLY TO OCCURRENCES WHICH OCCUR BEFORE THE RETROACTIVE DATE.

7.      Endorsements Attached At Issuance:          SEE ATTACHED SCHEDULE

By Acceptance of this policy the Insured agrees that the statements in the Declarations and the Application and any attachments hereto are the Insured's agreements and representations and that this policy embodies all agreements existing between the Insured and the Company or any of its representatives relating to this insurance.

IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary.

Stanley A. Galanski, President                    Emily B. Miner, Secretary

Date of Issue:  08/18/2016



# SCHEDULE OF FORMS AND ENDORSEMENTS
# FOLLOWING FORM EXCESS LIABILITY COVERAGE

THE FOLLOWING ARE THE FORMS ATTACHED TO AND FORMING PART OF THE POLICY AT INCEPTION:

| Form Number | Edition | Title |
|---|---|---|
| NAV LSX DEC | 09 15 | Declaration |
| NAV LSX 506 | 09 15 | Schedule of Forms and Endorsements |
| NAV LSX 500 | 09 15 | Commercial Excess Liability Coverage Form |
| NAV LSX 501 | 07 16 | Designated Products Exclusion Endorsement |
| NAV LSX 502 | 09 15 | Underlying Policy Receipt Endorsement |
| CG 2173 | 01 15 | Exclusion of Certified Acts of Terrorism |

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

May contain copyrighted material of the
Insurance Service Office, Inc with its permission.

**COMMERCIAL EXCESS LIABILITY**
**NAV LSX 500 09 15**

# FOLLOWING FORM EXCESS LIABILITY POLICY
### (DEFENSE INSIDE LIMITS)

THIS POLICY PROVIDES CLAIMS MADE COVERAGE ONLY. COVERAGE IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD OR ANY EXTENDED REPORTING PERIOD, IF APPLICABLE. THE PAYMENT OF DEFENSE EXPENSES REDUCES THE LIMITS OF INSURANCE. PLEASE READ THE ENTIRE POLICY CAREFULLY.

Various provisions of this policy restrict coverage. Read the entire policy carefully to determine your rights, duties and what is and is not covered.

Throughout the policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as an insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance. The word insured means any other person or organization qualifying as such under **SECTION III – WHO IS AN INSURED**.

Other words and phrases that appear in **bold** in this policy have special meanings. Refer to **SECTION VII - DEFINITIONS.**

**SECTION I – COVERAGE**

1. Insuring Agreement

A. Excess Liability

    1. Subject to the applicable limits of insurance, we will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages in excess of **underlying limits**, for **loss** to which this insurance applies. This insurance applies only if:

        a. the **loss** is caused by an **occurrence** that takes place in the **coverage territory**;

        b. the **loss** did not occur before the Retroactive Date, if any, shown in the Declarations, or after the end of the **policy period**;

        c. the **controlling underlying insurance** applies to the **loss**;

        d. all **underlying insurance** has been exhausted by payment of the limits of such insurance by the underlying insurer or payment of an amount equivalent to the limits of the **underlying insurance** by the underlying insurer and/or you;

        e. a claim for damages because of the **loss** is first made against the insured during the **policy period** or any applicable Extended Reporting Period we provide; and

        f. if the **controlling underlying insurance** so requires, the claim for damages because of **loss** is reported to us during the **policy period** or any applicable Extended Reporting Period we provide.

    2. The terms, conditions, definitions, exclusions and endorsements of the **controlling underlying insurance** are made a part of our policy, unless a more restrictive provision is contained in or endorsed to our policy.

Notwithstanding the foregoing, the following changes to the **controlling underlying insurance** made after our policy's inception shall not be binding on us unless we agree in writing:

        a. any change which is subject to an additional premium charge;

**COMMERCIAL EXCESS LIABILITY**
**NAV LSX 500 09 15**

    b.  the inclusion of an additional coverage extension endorsement; or

    c.  any change to the terms, conditions, definitions, exclusions or endorsements that broadens the scope of the coverage already provided.

All claims for damages because of **loss** to the same person will be deemed to have been made at the time the first of those claims is made against any insured.

3.  With respect to any **occurrence** covered by the **controlling underlying insurance**, we shall not be called upon to assume charge of the investigations, settlement or defense of any suit brought against the insured, but we shall have the right and be given the opportunity to associate with the underlying insurer and the insured to investigate, defend against and participate in the settlement of any claim or suit against the insured seeking damages which, in our opinion, will create liability on the part of us under the terms of this policy.

4.  With respect to any **occurrence** for which **underlying insurance** is unavailable because of exhaustion of limits, but is otherwise covered by the terms and conditions of the **controlling underlying insurance** and this policy, this insurance will apply in place of the **controlling underlying insurance,** and we shall have the right and duty to investigate claims and defend suits against the insured seeking damages, and have the right to settle claims or suits at our discretion, until we have paid our applicable Limits of Insurance.

5. As respects paragraph 4 above, **defense expenses** we incur in the investigation of any claim or defense of any suit will reduce our Limits of Insurance.

6. The amount we pay is limited, as set forth in **SECTION IV – LIMITS OF INSURANCE**.

## SECTION II - EXCLUSIONS

The EXCLUSIONS sections of the **controlling underlying insurance** are made part of this policy. If an inconsistency or contradiction exists between an Exclusion of this policy and an Exclusion of the **controlling underlying insurance**, the Exclusion of this policy will apply. However, in no case will coverage be excluded by the **controlling underlying insurance** and not excluded by this policy.

This insurance does not apply to any liability:

1. to which **controlling underlying insurance** does not apply;

2. for which coverage is provided by **controlling underlying insurance** at sub-limits that are lower than the limits of insurance applicable to other coverages provided by the **controlling underlying insurance** and lower than the **underlying limits**; but we shall recognize the reduction or exhaustion of the aggregate limits of insurance for the **controlling underlying insurance** that results from the payment of **loss** as a result of any claim or claims covered under the **controlling underlying insurance** but excluded by operation of this clause;

3. for **loss** which commenced prior to the Retroactive Date, shown in the Declarations, whether or not such **loss** continues, progresses, changes, or resumes during this **policy period**;

4. for damage to property any insured owns, rents or occupies, including any costs or expenses incurred by any insured or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including the prevention of injury to a person or damage to another's property;

5. for damage to personal property in the care, custody or control of any insured;

6. arising out of any **aircraft products**;

**COMMERCIAL EXCESS LIABILITY**
**NAV LSX 500 09 15**

7. arising out of the actual, alleged, suspected or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of **asbestos**;

8. arising out of the actual, alleged, suspected or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of **fungi** or bacteria;

9. arising out of the actual, alleged, suspected or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of **silica** or **silica related dust**;

10. arising out of **medical services**; however, this exclusion does not apply to:

    a. physicians, dentists, nurses, emergency medical technicians or paramedics employed by you to the extent that they are rendering first aid; or

    b. to a clinical trial investigator for actions governed by the protocol of a clinical trial;

11. arising out of any **employment practices** of any insured;

12. arising out of:

    a. war, including undeclared or civil war;

    b. war like action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    c. insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these;

13. imposed under:

    a. an uninsured or underinsured motorist, uninsured or underinsured boater, Medical Payments, Personal Injury Protection, No-Fault or any similar law;

    b. a workers compensation, disability benefits, unemployment compensation or any similar law;

    c. the Employee Retirement Income Security Act of 1974, any amendments thereto or any similar law;

14. arising out of any actual or alleged use or misuse of confidential or proprietary information;

15. arising out of any actual or alleged failure to prevent unauthorized access to, or unauthorized use of, your client's, or your client's customers':
    a. confidential or proprietary information; or
    b. information systems;

    and this exclusion applies, but is not limited, to any allegations of **loss** filed by third-parties based on or arising out any actual or alleged failure in a. or b. above.

**SECTION III – WHO IS AN INSURED**

The WHO IS AN INSURED section of the **controlling underlying insurance** is made part of this policy. Any person or organization that is an insured under the **controlling underlying insurance** is an insured under this policy to the same extent.

**COMMERCIAL EXCESS LIABILITY**
**NAV LSX 500 09 15**

## SECTION IV – LIMITS OF INSURANCE

The Limits of Insurance shown in the Declarations and the rules below are the maximum amount payable by us under this policy for all damages and **defense expenses** regardless of the number of insureds, claims made or suits brought, or persons or organizations making claims or bringing suits.

1. The Following Form Excess Aggregate Limit is the most we will pay for the sum of all damages and **defense expenses** for claims within the **policy period**;

2. Subject to paragraph 1. above, the Each Occurrence Limit is the most we will pay for all damages and **defense expenses** that arise out of any one **occurrence**.

## SECTION V – CONDITIONS

The CONDITIONS sections of the **controlling underlying insurance** are made part of this policy. If an inconsistency or contradiction exists between the Conditions of this policy and the Conditions of the **controlling underlying insurance**, the Conditions of this policy will apply.  Other than as to Limits of Insurance, in no event shall this policy grant broader coverage than would be provided by the **controlling underlying insurance**.

1. Appeals

At our discretion we may appeal any judgment that would result in a payment under this policy. When we do appeal, the costs associated with the appeal will reduce our Limits of Insurance.   If, however, the cost of prosecuting the appeal may exceed the limits of insurance, we will only pursue that appeal with your consent.

2. Bankruptcy or Insolvency

Bankruptcy or insolvency of the insured or the insured's estate will not relieve us of our obligations under this policy. The insured, however, will bear the risk that any **underlying insurance** is or may be uncollectible.   Financial impairment or insolvency of any company providing **underlying insurance** will not reduce the **underlying limits** or increase our obligations under this policy. We will not be required to drop down or replace **underlying insurance** in the event of financial impairment or insolvency.  Coverage under this policy will not be available unless and until the aggregate amount of the limits of all **underlying insurance** has been exhausted by the actual payment of **loss**.

3. Cancellation

   a.  The first Named Insured may cancel this policy at any time by providing us advanced written notice of the cancellation date.

   b.  We may cancel this policy at any time by providing the first Named Insured written notice of cancellation:

      i. at least 10 days in advance if we cancel for non-payment of premium; or

      ii. at least 90 days in advance if we cancel for any other reason.

   c.  If the **controlling underlying insurance** is cancelled for any reason, this policy is also cancelled. Reinstatement of the **controlling underlying insurance** does not reinstate this policy unless reinstatement is endorsed hereon. Return premium, if any, will be calculated per Condition 11. Premium. Proof of mailing will serve as proof of notice.

**COMMERCIAL EXCESS LIABILITY**
**NAV LSX 500 09 15**

4. Non-Renewal

   a.  We are not obligated to renew this policy; however, should we decide to not renew, we will provide the first Named Insured written notice of our decision at least 90 days prior to the expiration date shown in the Declarations.

   b.  We will not restrict the terms or increase premium of this policy at renewal unless we have given the first Named Insured at least 30 days advanced notice of any such changes; however, no notice will be provided or required if a restriction in this policy results from a restriction applicable to **controlling underlying insurance**.

   c.  The first Named Insured may elect to not renew this policy by:

      i. providing advance written notice to us;

      ii. rejecting our offer to renew; or

      iii. failing to reply to our offer to renew.

      With respect to options i. and ii. above, proof of mailing will serve as proof of notice.

5. Changes

This policy contains the entire agreement between you and us. No change in, modification of, or assignment of interest under this policy shall be effective except when made by written endorsement to this policy which is signed by an authorized representative of us.

6. Duties When There is an **Occurrence**, Claim or Suit

   a.  You must see to it that we are notified as soon as practicable of any **occurrence** which may result in a claim under this policy. You shall also provide other claim information or reports as reasonably requested by us from time to time.  To the extent possible, notice should include:

      i. how, when and where the **occurrence** took place;

      ii. the names and addresses of any injured persons and witnesses; and

      iii. the nature and location of any injury or damage arising out of the **occurrence**.

   b.  If a claim is made or suit is brought against any insured which may be reasonably expected to result in a claim under this policy, you must:

      i. immediately record the specifics of the claim or suit and the date received; and

      ii. notify us, and any other insurers who could be obligated to provide coverage, as soon as practicable.

   c.  You and any other involved insured must:
      i. immediately send us, and any other insurers who could provide coverage, copies of any demands, notices, summonses or legal papers received in connection with a claim or suit which may be reasonably expected to result in a claim under this policy;

      ii.  authorize us to obtain records and other information;

**COMMERCIAL EXCESS LIABILITY**
**NAV LSX 500 09 15**

iii. cooperate with us in the investigation or settlement of the claim, issues relating to coverage under this policy, or defense against the suit; and

iv. assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of the injury or damage to which this insurance may apply.

d.   Notice to us must be sent to our address shown in the Declarations.

e.   No insured will, except at that insured's own cost:

i.   voluntarily make a payment;

ii.  assume any obligation; or

iii.  incur any expense, other than first aid

that might reasonably involve this policy, without our consent.

7.   Legal Action Against Us

No person or organization has a right under this insurance:

a.   to join us as a party or otherwise bring us into a suit asking for damages from an insured; or

b.   to sue us on this insurance unless all of its terms have been fully complied with.

8. Maintenance of **Controlling Underlying Insurance**

During the **policy period** you must maintain **controlling underlying insurance** with **underlying limits** at least equal to the amounts shown in the Declarations. The **underlying limits** must be unimpaired at the beginning of this **policy period**. In the event of non-concurrent policy periods between this policy and the **underlying insurance**, only covered events taking place during the **policy period** of this policy shall be considered in determining the extent of any erosion or exhaustion of the underlying aggregate limits.

If you fail to maintain the **controlling underlying insurance** this policy will be invalid. If you fail to maintain **underlying limits**, we will only be liable to the extent we would have been liable had you maintained the **underlying limits**. Reduction of **underlying limits** by the payment of judgments or settlements for **loss** to which this insurance applies after the inception of this policy will not be considered a failure to maintain **underlying limits**.

9. Other Insurance

This insurance is excess over any insurance available to the insured except insurance purchased specifically to apply in excess of this policy.

10. Payment of Damages

When the amount of damages payable under this policy has been determined by final judgment or a written settlement agreement between the claimant and us, we will pay that amount, up to our applicable Limits of Insurance, after the **controlling underlying insurance** or the insured has paid the full amount of the **underlying limits**.

**COMMERCIAL EXCESS LIABILITY**
**NAV LSX 500 09 15**

11. Premium

The Premium shown in the Declarations is the premium for the coverage we provide for the **policy period**. The first Named Insured is responsible for the payment of all premiums under this policy.

If the Company cancels this Policy prior to its expiration date, a refund due shall be computed on a pro-rata basis and shall be promptly returned to the first Named Insured.

If the first Named Insured cancels this Policy prior to its expiration date, the refund due shall be 90% of the pro-rata unearned paid premium, or 75% of the total policy term premium at inception of this Policy, whichever is less but subject to the minimum premiums shown in the Declarations.  The first Named Insured may elect in writing to the Company to have any return premium due applied to the additional premium charged for any Extended Reporting Period endorsement.

Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

12. Separation of Insureds

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

    a.   as if each Named Insured were the only Named Insured; and

    b.   separately to each insured against whom claim is made or suit is brought.

13. Transfer of Rights of Recovery Against Others

If an insured has any rights to recover all or part of any payment we have made under this insurance, the insured must preserve those rights and, at our request and expense, pursue those rights for our benefit or transfer those rights to us. The insured must do nothing after an **occurrence** to impair those rights; however, if you waive any right of recovery against a specific person or organization for a **loss**, as required under a written contract entered into prior to the **occurrence**, we agree to also waive our right of recovery pursuant to the terms of that written contract.

14. When We Defend

If the law of the governing jurisdiction permits an insured to select their own counsel to be paid for by us, we shall only be liable for the reasonable and necessary defense costs of one law firm per insured at rates customarily paid for the defense of similar claims in the jurisdiction where the claim is pending.

15. Claims outside the United States of America, its Territories and Possessions, or Canada

When we have the duty to defend an insured and are prevented by law or otherwise from doing so, we will reimburse the insured for any reasonable and necessary expenses incurred in the defense of a suit to which this insurance applies. If the insured becomes legally obligated to pay damages to which this insurance applies and we are prevented by law from paying such damages on behalf of the insured, we will reimburse the insured, in U.S currency at the prevailing exchange rate at the time the damages were paid, for such damages.

16. Trade and Economic Sanctions

This Policy does not provide coverage for an insured, transaction or that part of **loss** that is uninsurable under the laws or regulations of the United States concerning trade or economic sanctions

**COMMERCIAL EXCESS LIABILITY**
**NAV LSX 500 09 15**

17. Service of Suit

In the event we fail to pay an amount claimed to be due hereunder, we, at the request of the first Named Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction. Nothing herein constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to United States District Court, or to seek a transfer of an action to another court as permitted by law.

Service of process in such suit shall be made upon:

> Name:  Navigators Management Company
> Attn:  General Counsel
> Address:   400 Atlantic St., 8th floor, Stamford, CT 06901

and in any suit instituted against such person upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

The General Counsel is authorized and directed to accept service of process on behalf of the company in any such suit and, upon the request of the first Named Insured, to give a written undertaking to the first Named Insured that he or she will enter a general appearance upon the company's behalf in the event such suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States that makes provision therefor, the company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of any Named Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or true copy thereof.

18.  Headings

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**SECTION VI - EXTENDED REPORTING PERIODS**

1.   When an Extended Reporting Period applies to the **controlling underlying insurance** without a premium charge, an Extended Reporting Period will also apply to this policy for the period provided by the **controlling underlying insurance**.

2.   When an Extended Reporting Period applies to the **controlling underlying insurance** for an additional premium charge, an Extended Reporting Period may, for an additional premium, also apply to this policy, provided that you request that we provide an Extended Reporting Period and promptly pay any premium due, subject to the following:

   a.   Premium for an Extended Reporting Period will not exceed 200% of the policy premium; and

   b.   Once the premium has been paid, the Extended Reporting Period cannot be cancelled and the premium cannot be refunded.

**COMMERCIAL EXCESS LIABILITY**
NAV LSX 500 09 15

3.  When 1. or 2. above apply, the Extended Reporting Period will terminate on the termination date of the Extended Reporting Period of the **controlling underlying insurance**, but in no event will our Extended Reporting Period exceed 84 months.

An Extended Reporting Period provides additional time, after the end of the **policy period**, during which you may continue to report claims to us. An Extended Reporting Period does not change the **policy period**, increase limits of insurance or reinstate any aggregate limit.

## SECTION VII – DEFINITIONS

The DEFINITIONS sections of the **controlling underlying insurance** are made part of this policy, and apply to words or phrases used in this policy provided always that words or phrases in bold font in this policy will have the meaning given them in this policy.

**Aircraft products** means a product or component thereof made, sold, licensed, handled or distributed by an insured, which is:

a.  an aircraft;

b.  ground control or support equipment; or

c.  any article, component or device used to achieve, control or maintain flight or landing of an aircraft.

**Asbestos** means the mineral in any form, including but not limited to its incorporation in, or being made a component of, any other substance, product or material.

**Controlling underlying insurance** means the policy listed in the Schedule of Underlying Insurance shown in the Declarations, or its renewal or replacement, which applies to the **loss**, or would have applied but for:

a.  an exclusion in that policy; or

b.  the exhaustion or erosion of an aggregate limit of insurance;

If more than one policy is listed in the Schedule of Underlying Insurance, the **controlling underlying insurance** is the policy which applies to the **loss** or would have applied but for the reasons a. or b. listed above.

**Coverage territory** means the coverage territory as defined in the **controlling underlying insurance**.

**Defense expenses** means expenses we incur to investigate a claim or defend a suit. **Defense expenses** include interest which accrues on our portion of a judgment, after entry of that judgment and after the insured or any underlying insurer has paid the full amount of their portion of the judgment but before we have paid, offered to pay or deposited in the court the part of the judgment that is within our applicable Limits of Insurance.   **Defense expenses** are part of, and not in addition to, the Limits of Insurance, and the payment of **defense expenses** reduces the Limits of Insurance.

**Employment practices** means:

a.  dismissal, discharge or termination of employment, whether actual, constructive or retaliatory;

b.  failure or refusal to hire or promote;

c.  discipline, demotion, coercion or retaliatory treatment;

d.  failure to grant tenure;

**COMMERCIAL EXCESS LIABILITY**
**NAV LSX 500 09 15**

    e.   negligent employment evaluation;

    f.   sexual or other workplace harassment, including quid pro quo and hostile work environment;

    g.   employment discrimination;

    h.   invasion of privacy, violation of employment related civil rights, employment related libel, slander or defamation;

    i.   creating or enforcing or failing to create or enforce employment related policies or procedures; or

    j.   actual or alleged violations of the Family and Medical Leave Act of 1993 or its amendments.

**Fungi** means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by **fungi**. But **fungi** does not include any **fungi** that are, are on, or are contained in a good or product intended for human consumption.

**Loss** means the total sum which the insured shall become obligated to pay as the result of an **occurrence**.

**Medical services** means:

    a.   dental, medical, mental health, nursing, surgical, imaging, clinical testing or other similar service providing direct care to a patient and performed by a medical intern, resident, technician, nurse, physician or other health care professional;

    b.   the furnishing of food, beverages, medications or appliances in connection with such services; or

    c.   the post-mortem handling of human bodies.

**Occurrence** means an accident, offense or other incident to which the **controlling underlying insurance** applies.

**Policy period** means the period of time between the effective date shown in the Declarations and the earlier of the expiration date shown in the Declarations or the expiration date shown in an endorsement to this policy.

**Silica** means silicon dioxide in its natural state, occurring in crystalline, amorphous or impure forms, **silica** particles, **silica** dust or **silica** compounds. It does not include processed colloidal silicon dioxide.

**Silica related dust** means a mixture or combination of **silica** and other dust particles.

**Underlying insurance** means the liability insurance provided under the policy or policies shown in the Schedule of Underlying Insurance.

**Underlying limits** means the amounts shown in the Declarations as the minimum limits of insurance to be provided by **controlling underlying insurance** and any other **underlying insurance**.  If any underlying insurance policy has a limit of liability greater than the amount shown in the Schedule of Underlying Insurance, then this policy will apply in excess of the greater amount; and if any underlying insurance policy has a lower limit of liability than the amount shown in the Schedule of Underlying Insurance, then this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance.

## THIS ENDORSEMENT CHANGES THE POLICY.
## PLEASE READ IT CAREFULLY.

## DESIGNATED PRODUCTS EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:
FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY

The following is added to **SECTION II - EXCLUSIONS**

16. arising out of:
   (a) any of the following products, or products made of or containing the following, for manufacturers or sponsors of clinical trials:

- Any product containing mercury, where such product is intended to be implanted, ingested, injected, inhaled or absorbed
- Birth control or fertility goods or products whose primary function is to control or affect fertility, fertilization, conception or contraception.
- Di-(2-Ethylhexyl) Phthalate (DEHP) used in goods or products approved for neonatal patients
- Diethylstilbestrol (DES)
- Ephedra
- Ephedrine, or pseudoephedrine, except where used in Over the Counter or prescription products
- Fentanyl or Fentanyl patches, except for generics manufactured after addition of the warnings for opioid addiction and Serotonin Syndrome to the labeling
- Isotretinoin
- Latex gloves when sensitivity warning is not on package or other labeling
- Live Virus Vaccines, except for attenuated vaccines
- Metoclopramide (including but not limited to Reglan) in regards to side effects of Tardive Dyskinesia, worsening of Parkinson's, and other movement disorders resulting from usage of the drug,
- Oral Hormone replacement products approved for menopause treatment
- Pain Pumps when inserted directly into an orthopedic joint and administering pharmaceuticals not approved for joint application
- Permanent Breast implants, except when part of mastectomy reconstruction products
- Phentermine used in combination with fenfluramine (including but not limited to Pondimin) or dexfenfluramine (Redux)
- Propoxyphene (including but not limited to Darvon or Darvocet)
- Selective Serotonin Reuptake Inhibitors (SSRI), except for generic manufactured after addition of the warnings to labeling for increased suicide risk and increased birth defect risk if used by pregnant women
- Vaccines with preservatives approved for persons under age of 18

   (b) Blood Banks and Blood Donation Facilities, except biobanks storing samples for research and development

The exclusions above shall not apply to contract manufacturers who are indemnified and held harmless contractually, or do not have responsibility for label or warning design, regulatory reporting, safety surveillance, formulation or development.

### ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

May contain copyrighted material of the
Insurance Service Office, Inc with its permission.

# THIS ENDORSEMENT CHANGES THE POLICY.
# PLEASE READ IT CAREFULLY.

## UNDERLYING POLICY RECEIPT ENDORSEMENT

This endorsement modifies insurance provided under the following:
FOLLOWING FORM EXCESS LIABILITY POLICY

It is hereby understood and agreed that **SECTION V – CONDITIONS** is amended to add the following:

19.  If this policy was issued prior to the receipt of all underlying policies, the following condition applies.

   a.  The terms, definitions, conditions, exclusions or limitations stated in the binders for the underlying policies have been relied upon in the underwriting of this policy.   Any underlying policy  that is issued with any terms, definitions, conditions, exclusions or limitations that are changed in any manner from its binder, or differ in any respect from its binder, are not accepted as part of this policy.  Any changes or differences between an underlying policy binder and the issued underlying policy are required to be accepted via a written endorsement to this policy in order to be effective. That notwithstanding, if we have not provided written objection to any such changes or differences  within 30 days of receipt of the underlying policy, then we accept the policy as issued and delivered to us.

## ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

May contain copyrighted material of the
Insurance Service Office, Inc with its permission.

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

ELECTRONICALLY FILED
5/26/2021 4:56 PM
02-CV-2021-900918.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK



| | **Ironshore Insurance Services LLC.** |
|---|---|
| | A subsidiary of Ironshore Holdings (U.S.) Inc. |
| | 50 South 16th Street |
| | Suite 3410 |
| | Philadelphia, PA  19102 |

October 6, 2016

Barbara Webster
Willis of Pennsylvania, Inc.
100 Matsonford Rd Radnor Corporate Ctr Bldg 5 Ste 200
Radnor, PA  19087

|  | | |
|---:|---|---|
| **Re:** | KVK-Tech, Inc. | |
| | 110 Terry Drive, Suite 200 | |
| | Newtown, PA  18940 | |
| **Line Of Business:** | Life Sciences – Primary | |
| **Policy Number:** | 002862800 | |
| **Policy Term:** | 7/22/2016 TO 8/21/2017 | |

Dear Barbara:

Enclosed please find the policy for the above referenced account.   We appreciate your consideration of Ironshore.  Feel free to contact me with any questions or concerns.


Sincerely,


Farah Khan


Farah Khan
Assistant Vice President - IronHealth
Ironshore Insurance Services LLC.
Office: +1 (267) 443-2891
Cell: +1 (215) 284-9625
Email: farah.khan@ironshore.com


**Exhibit "B"**



**IRONSHORE SPECIALTY INSURANCE COMPANY**

Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

The insurer which has issued this insurance is not licensed by the Pennsylvania Insurance Department and is subject to limited regulation. This insurance is NOT covered by the
Pennsylvania Property and Casualty Insurance Guaranty Association.

# PRODUCTS/COMPLETED OPERATIONS LIABILITY AND PROFESSIONAL LIABILITY POLICY FOR LIFE SCIENCES

THIS POLICY IS WRITTEN ON A CLAIMS MADE AND REPORTED BASIS
(EXCEPT WHERE OTHERWISE INDICATED)
PLEASE READ THE ENTIRE POLICY CAREFULLY.

**Policy number:** 002862800

**ITEM 1.  NAMED INSURED AND PRINCIPAL ADDRESS:**

KVK-Tech, Inc.

110 Terry Drive, Suite 200

Newtown, PA  18940

**ITEM 2.  SURPLUS LINES PRODUCER FIRM AND ADDRESS:**

Barbara Webster

Willis of Pennsylvania, Inc.

100 Matsonford Rd Radnor Corporate Ctr Bldg 5 Ste 200

Radnor, PA  19087

**ITEM 3.  POLICY PERIOD:**

Inception Date: July 22, 2016
Expiration Date: August 21, 2017
At 12:01 a.m. Standard Time both dates at the Principal Address Stated in ITEM 1.

**ITEM 4.  COVERAGES PURCHASED (As indicated by check mark in box):**

A)  Products/Completed Operations Liability  ☒

B)  Professional Liability  ☐

**ITEM 5.  LIMITS OF LIABILITY :**

A)  Products/Completed Operations Limit of Liability            $15,000,000        Each Occurrence
*subject to the Aggregate Limit of Liability stated in Item 5G below*

B)  Professional Liability Limit of Liability Wrongful Act        N/A          Each
*(subject to the Aggregate Limit of Liability stated in Item 5G below)*

C)  Withdrawal Expenses Reimbursement Insurance (Class 1 Recall    $500,000     in the Aggregate for all
only) Sub-Limit of Liability:
  Withdrawal Expenses
  (*subject to the Aggregate* Limit of Liability  stated in Item
  5G below)

D)  Repair and Replacement of "Impaired Property" Expenses the    $10,000      in
Aggregate for all such Reimbursement Insurance Sub-Limit of
Liability: Expenses, *(subject to the Aggregate Limit of Liability
stated in Item 5G below)*

E)  Human Clinical Trial Participant Medical Expenses in the    $1,000 per participant / $10,000
Aggregate Reimbursement Insurance Sub-Limits of Liability: for
all Medical   Expenses, (*subject to the Aggregate Limit of
Liability stated in Item 5G below)*

F)  Personal Information Protection Expenses Reimbursement    $25,000      in
Insurance the Aggregate for all Personal Information Protection
*(subject to the Aggregate Limit of Liability stated in Item 5G
below)*

G)  Aggregate Limit of Liability Applicable to Products/Completed    $15,000,000      in the Aggregate for all
Damages, Operations Liability and Professional Liability
Coverages, Defense Expenses, and other expenses covered
under Insuring Agreements A through F of this Policy.

**ITEM 6.  DEDUCTIBLES / SELF-INSURED RETENTIONS**

| | | | |
|---|---|---|---|
| A) | Products/Completed Operations Liability<br>Each Occurrence Deductible or Self Insured Retention (SIR):  $100,000 | ☒Deductible | ☐SIR |
| B) | Professional Liability<br>Each Wrongful Act Deductible or Self Insured Retention (SIR): N/A | ☐ Deductible | ☐SIR |
| C) | Withdrawal Expenses<br>Each Withdrawal Deductible or Self Insured Retention (SIR):  $50,000 | ☒Deductible | ☐ SIR |
| D) | Repair and Replacement of Impaired Property Expenses:  No Deductible or SIR | | |
| E) | Medical Expenses:  No Deductible or SIR | | |
| F) | Personal Information Protection Event Expenses<br>Each Event Deductible or Self Insured Retention (SIR):  $5,000 | ☒Deductible | ☐SIR |
| G) | Aggregate Deductible Eroded by all the Above Retentions:  $500,000 | | |

**ITEM 7.  RETROACTIVE DATES**

    A)   Products/Completed Operations Liability        $5,000,000 – 02/01/2007;

                                                              $5,000,000 xs $5,000,000 – 8/21/2009;

                                                              $5,000,000 xs $10,000,000 – 8/21/2012

    B)   Professional Liability                               N/A

**ITEM 8.  TOTAL ADVANCE PREMIUM:** (minimum 25% earned premium)

| **Premium:** | | *Compliance with all surplus lines placement requirements, including stamping the Policy and collection and payment of surplus lines taxes, is the responsibility of the broker.* |
|---|---|---|
| Premium: | $284,025.00 | |
| ----------------------- | ------------------ | |
| Total Amount Due: | $284,025.00 | *See Invoice for the date Premium is due and payable.  Failure to pay the premium in full may result in voidance of coverage.* |

    Rating Basis: $100,000,000 Net Sales
    Auditable:  No
    Audit Rate: Flat

**ITEM 9.  NOTICES UNDER SECTION IV OF THE POLICY SHOULD BE ADDRESSED TO:**

       **USCLAIMS@IRONSHORE.COM**                  All other notices under the Policy should be addressed to:

    Claims Department                                Underwriting Department
    IronHealth                                         IronHealth
    175 Powder Forest Drive,                  175 Powder Forest Drive,
    Weatogue, CT 06089                       Weatogue, CT 06089
    860-408-7801                                   860-408-7801
    IronHealthClaims@ironshore.com

**ITEM 10.  POLICY FORM & ENDORSEMENTS ATTACHED AT ISSUANCE:**

    LFS.005 (1.10 ed) Primary Policy Form

      1. LFS.END.143 (12.11 ed ) Mandatory Designated Products Exclusion (Primary)

      2. LFS.025 (3.10 ed) Named Insured and Retroactive Date

      3. LFS.049 (7.10 ed.) Amendment to Exclusions

      4. LFS.END.220 (11.13 ed.) Batch Occurence Endorsement

      5. OFAC.END.001 (11.14 ed.) OFAC Compliance Notice

      6. LFS.END.178 (7.12 ed.) Additional Insured Endorsement

These Declarations, the completed signed Application and the Policy with Endorsements shall constitute the contract between the Insured and the Underwriter.

BY: _____                       **DATE:** October 6, 2016

    **Authorized Signature**



## IRONSHORE SPECIALTY INSURANCE COMPANY

Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Insured Name:** KVK-Tech, Inc.
**Policy Number:**002862800

# IronHealth for Life Sciences

**THIS IS A CLAIMS-MADE AND REPORTED POLICY THAT APPLIES ONLY TO CLAIMS WHICH ARE FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD (OR AN EXTENDED REPORTING PERIOD, IF APPLICABLE), AND REPORTED AS REQUIRED BY SECTION V, CONDITION A.  DEFENSE EXPENSES COVERED BY THIS POLICY ARE INCLUDED WITHIN THE LIMITS OF LIABILITY.  VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE. PLEASE READ THE ENTIRE POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.**

Throughout this policy, the words "you" and "your" refer to the **Named Insured** shown in the Declarations, and any other person or organization qualifying as an **Insured** under SECTION III -WHO IS AN INSURED of this Policy. The words "we", "us" and "our" refer to the Company providing this insurance.  Other words and phrases that appear in **bold** have special meaning described in SECTION VII- DEFINITIONS.

In consideration of the payment of premium, in reliance on the statements made in the application, and subject to the Definitions, Exclusions, Conditions and other terms of this Policy, it is agreed as follows:

**SECTION I.   INSURING AGREEMENTS**

    **A.   PRODUCTS/COMPLETED OPERATIONS BODILY INJURY AND PROPERTY DAMAGE LIABILITY INSURANCE**

        We will pay  **Damages** that the **Insured** becomes legally obligated to pay because of a **Claim** alleging **Bodily Injury** or **Property Damage** caused by an **Occurrence**, provided that:

        1.   the **Bodily Injury** or **Property Damage** is included within the **Products-Completed Operations Hazard** to which this insurance applies;

        2.   the **Bodily Injury** or **Property Damage** takes place on or after the Retroactive Date and prior to the expiration date of the **Policy Period**;

        3.   the **Occurrence** takes place in the **Coverage Territory**; and

        4.   the **Claim** was first made against the **Insured** during the **Policy Period** or any applicable Extended Reporting Period, and was reported to us as required by SECTION V, Condition A.  A **Claim** will be deemed first made as set forth in SECTION V, Condition B.

    **B.   PROFESSIONAL LIABILITY INSURANCE**

        We will pay **Damages** that the **Insured** becomes legally obligated to pay because of a **Claim** alleging a **Wrongful Act** by the **Insured** or by a party for whose conduct the **Insured** may be legally responsible in rendering or failing to render **Professional Services** (including in the course of a **Human Clinical Trial**), provided that:

        1.   the **Wrongful Act** takes place on or after the Retroactive Date and prior to the expiration date of the **Policy Period**;

2.  the **Wrongful Act** takes place in the **Coverage Territory**; and

3.  the **Claim** was first made against the **Insured** during the **Policy Period** or any applicable Extended Reporting Period, and was reported to us as required by SECTION V, Condition A. A **Claim** will be deemed first made as set forth in SECTION V, Condition B.

**Human Clinical Trials** described in your application are automatically covered, unless we exclude them by endorsement to this Policy. This Policy will only apply to those trials, known as **Human Clinical Trials Which Must Be Underwritten And Approved To Be Covered,** if you provide us with prior written notice describing the trial, we agree to cover such trial, and you agree to any terms, conditions and additional premiums imposed by us for coverage of such trial.

**C.  WITHDRAWAL EXPENSES REIMBURSEMENT INSURANCE**

Subject to the **Withdrawal Expenses** Limit of Liability and the Deductible/SIR stated in Item 5C of the Declarations, we will reimburse the **Named Insured** for any **Withdrawal Expenses** actually paid by any **Insured**, provided that:

1.  the **Withdrawal Expenses** are incurred as a direct result of a **Class I Recall**;

2.  the **Class I Recall** begins during the **Policy Period**;

3.  the **Class I Recall** is reported to us as soon as practicable and within 10 days of the expiration of the **Policy Period**; and

4.  the **Withdrawal Expenses** are incurred within one year of the date the **Class I Recall** began.

This **Withdrawal Expenses** Limit of Liability is included within, and is not in addition to, the Aggregate Limit of Liability for Products/Completed Operations Liability and Professional Liability coverage stated in Item 5G of the Declarations.

**D.  REPAIR OR REPLACEMENT OF IMPAIRED PROPERTY EXPENSES REIMBURSEMENT INSURANCE**

Subject to the Repair or Replacement of **Impaired Property** Expenses Limit of Liability stated in Item 5D of the Declarations, we will pay reasonable and necessary expenses actually paid by any **Insured** to repair, update, replace, adjust or inspect your **Impaired Property** due to a defect, deficiency or inadequate condition in it, provided that the repair, update, replacement, adjustment or inspection:

1.  commences during the **Policy Period**;

2.  is reported to us as soon as practicable and during the **Policy Period**; and

3.  you obtain our written consent before incurring such expenses.

This Repair or Replacement of **Impaired Property** Expenses Limit of Liability is included within, and is not in addition to, the Aggregate Limit of Liability for Products/Completed Operations Liability and Professional Liability coverage stated in Item 5G of the Declarations.  No deductible or Self-Insured Retention applies to this coverage.

**E.  HUMAN CLINICAL TRIAL PARTICIPANT MEDICAL EXPENSES REIMBURSEMENT INSURANCE**

Subject to the Human Clinical Trial Participant **Medical Expenses** Limits of Liability stated in Item 5E of the Declarations, we will reimburse the **Named Insured** for **Medical Expenses** actually paid by any **Insured** to treat **Bodily Injury** to a participant in a **Human Clinical Trial**, provided that:

1.  the **Bodily Injury** takes place during the **Policy Period**;

2.  the **Bodily Injury** results directly from participation in the **Human Clinical Trial**;

3.  the **Medical Expenses** are reported and submitted to us within 1 year of the **Bodily Injury**; and

4.  the **Medical Expenses** are not incurred for planned concurrent treatment of side effects as set forth in the **Human Clinical Trial** protocol.

This Human Clinical Trial Participant **Medical Expenses** Limits of Liability are included within, and are not in addition to, the Aggregate Limit of Liability for Products/Completed Operations Liability and Professional Liability coverage stated in Item 5G of the Declarations.  No deductible or Self-Insured Retention applies to this coverage.

**F.   PERSONAL INFORMATION PROTECTION EXPENSES REIMBURSEMENT INSURANCE**

Subject to the **Personal Information Protection Expenses** Limit of Liability and the Deductible/SIR stated in item 5F of the Declarations, we will reimburse the **Named Insured** for any **Personal Information Protection Expenses** actually paid by the **Named Insured** for a **Personal Information Protection Event,** provided that:

1.   the **Personal Information Protection Event** takes place in the course of a **Human Clinical Trial** and during the **Policy Period**;

2.   the **Personal Information Protection Event** is reported to us as soon as practicable and during the **Policy Period** or within 30 days of the Policy expiration date; and

3.   you obtain our written consent before incurring **Personal Information Protection Event Expenses**.

The **Personal Information Protection Expenses** Limit of Liability is included within, and is not in addition to, the Aggregate Limit of Liability for Products/Completed Operations and Professional Liability coverage stated in Item 5G of the Declarations.

**G.   DEFENSE OF SUITS AND PAYMENT OF DEFENSE EXPENSES UNDER INSURING AGREEMENTS A AND B**

1.   We will have the right and duty to defend the **Insured** against any **Suit** covered under Insuring Agreements A or B above, even if the allegations made in the **Suit** are groundless, false or fraudulent. We may, at our discretion, investigate any **Occurrence** or **Wrongful Act**.  We also have the discretion to settle any **Claim** or **Suit** covered under Insuring Agreements A or B.

2.   We will pay **Defense Expenses** incurred on any covered **Claim** we elect to investigate or settle, or any **Suit** we defend.

3.   The amounts we will pay for **Damages** and **Defense Expenses** under Insuring Agreements A and B and for expenses covered under Insuring Agreements C, D, E and F are limited as described in SECTION II. LIMITS OF LIABILITY AND DEDUCTIBLES OR SELF-INSURED RETENTIONS. Our right and duty to defend or make any payments under this Policy ends when the applicable Limit of Liability has been exhausted through our payment of **Damages** and **Defense Expenses** covered under Insuring Agreements A and B, and expenses covered under Insuring Agreements C, D, E and F.

**SECTION II.   LIMITS OF LIABILITY AND DEDUCTIBLES OR SELF- INSURED RETENTIONS**

**A.   Limits of Liability**

1.   The Limits of Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

  a.   **Insureds**;

  b.   **Claims** made or **Suits** brought; or

  c.   persons or organizations making **Claims** or bringing **Suits**.

2.   The Products/Completed Operations Liability and Professional Liability Aggregate Limit of Liability stated in Item 5G of the Declarations is the most we will pay under this Policy for all **Damages, Defense Expenses, Withdrawal Expenses,** repair or replacement of **Impaired Property** expenses, **Medical Expenses** and **Personal Information Protection Expenses** for which this Policy provides insurance.

3.   Subject to the Products/Completed Operations Liability and Professional Liability Aggregate Limit of Liability, the Each **Occurrence** Limit stated in Item 5A of the Declarations is the most we will pay for the sum of all **Damages** and **Defense Expenses** because of all **Bodily Injury** and **Property Damages** arising out of any one **Occurrence** for which this Policy provides insurance under Insuring Agreement A.

4.   Subject to the Products/Completed Operations Liability and Professional Liability Aggregate Limit of Liability, the Each **Wrongful Act** Limit stated in Item 5B of the Declarations is the most we will pay for all **Damages** and **Defense Expenses** resulting from one **Wrongful Act** (including **Related Wrongful Acts**) for which this Policy provides insurance under Insuring Agreement B.

5. Subject to the Products/Completed Operations Liability and Professional Liability Aggregate Limit of Liability, the **Withdrawal Expenses** Limit of Liability stated in Item 5C of the Declarations is the most we will pay for all **Withdrawal Expenses** for which this Policy provides insurance under Insuring Agreement C.

6. Subject  to the Products/Completed Operations Liability and Professional Liability Aggregate Limit of Liability, the Repair and Replacement of **Impaired Property** Expenses Limit of Liability stated in Item 5D of the Declarations is the most we will pay for all repair and replacement of **Impaired Property** expenses for which this Policy provides insurance under Insuring Agreement D.

7. Subject to the Products/Completed Operations Liability and Professional Liability Aggregate Limit of Liability, the per participant **Human Clinical Trial** Participant **Medical Expenses** Limit of Liability stated in Item 5E of the Declarations is the  most we will pay for all **Medical Expenses** incurred by any one **Human Clinical Trial** participant for which this Policy provides insurance under Insuring Agreement E. This per participant Limit of Liability is also subject to the Aggregate Medical Expense Limit of Liability stated in Item 5E which is the most we will pay for all **Medical Expenses** incurred by all **Human Clinical Trial** participants for which this Policy provides insurance under Insuring Agreement E.

8. Subject to the Products/Completed Operations Liability and Professional Liability Aggregate Limit of Liability, the **Personal Information Protection Event** Limit of Liability stated in Item 5F of the Declarations is the most we will pay for all **Personal Information Protection Event Expenses** for which this Policy provides insurance under Insuring Agreement F.

9. All **Insureds** under this Policy share the Limits of Liability.

10. If any **Claim** made against an **Insured** is covered both under this Policy and under any other primary policy issued by us or any of our affiliates, our (and, if applicable, our affiliate's) maximum aggregate limit of liability under all such policies for all **Damages** and/or **Defense Expenses** in respect of such **Claim** will not exceed the largest single available limit of liability under any such policy.  In no event will more than one policy issued by us respond to the same **Claim**.

11. The limits of this Policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the **Policy Period** shown in the Declarations, unless the **Policy Period** is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the applicable limit of liability.

**B.  Deductibles or Self-Insured Retentions**

1. You will be responsible for payment in full of any applicable Deductibles or Self-Insured Retentions stated in Item 6 of the Declarations. We have the option, but not the obligation, to pay all or part of any applicable Deductible or Self-Insured Retention on your behalf.  In the event we exercise this option, you will repay us promptly upon demand.

2. Our obligation under this Policy to pay **Damages, Defense Expenses** or expenses covered under Insuring Agreements A, B, C, and F will apply in excess of any applicable Deductible or Self-Insured Retention.

3. Where applicable, the Deductible or Self-Insured Retention will be satisfied by your payment of any **Damages, Defense Expenses** or expenses covered under this Policy.

**SECTION III.  WHO IS AN INSURED**

A. You are an **Insured**.  If you are designated in the Declarations as:

an individual, you and your spouse are **Insureds**, but only with respect to the conduct of a business of which you are the sole owner.

1. a partnership (including a limited liability partnership) or a joint venture, you are an **Insured**.  Your members, your partners and their spouses are also **Insureds**, but only with respect to the conduct of your business.

2. a limited liability company, you are an **Insured**.  Your members are also **Insureds**, but only with respect to the conduct of your business.  Your managers are also **Insureds**, but only with respect to their duties as your managers.

3. an organization (including a professional corporation) other than a partnership, joint venture or limited liability company, you are an **Insured**. Your **Executive Officers** and directors are also **Insureds**, but only with respect to their duties as your officers or directors. Your stockholders are also **Insureds**, but only with respect to their liability as stockholders.

4. a trust, you are an **Insured**. Your trustees are also **Insureds**, but only with respect to their duties as trustees.

B. Each of the following is also an **Insured**:

1. **Employees and Volunteers** --Your **Employees** are **Insureds**, but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business, and your **Volunteer Workers** are **Insureds**, but only for acts within the scope of their duties related to the conduct of your business. However, none of these **Employees** or **Volunteer Workers** are **Insureds** for:

   a. **Bodily Injury**:

      (i) to you or any other **Employee** or **Volunteer Worker** while performing duties related to the conduct of your business;

      (ii) to the spouse, child, parent, brother or sister of any person identified in paragraph B1(a)(i) above as a result of the **Bodily Injury** identified in that same subparagraph ;

      (iii) for which there is any obligation to share **Damages** with or repay someone else who must pay **Damages** because of the injury described in paragraphs B(1)(a)(i)-(ii) above; or

   b. **Property Damage** to property:

      (i) owned, occupied or used by any **Insured**; or

      (ii) rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by any **Insured**.

2. **Real Estate Managers** -- any person (other than your **Employee** or **Volunteer Worker**) or any organization while acting as your real estate manager.

3. **Temporary Property Custodians** -- Any person or organization having proper temporary custody of your property if you die, but only:

   a. with respect to liability arising out of the maintenance or use of that  property; and

   b. until your legal representative has been appointed.

4. Legal Representative -- Your legal representative if you die, but only with respect to duties as such.  That representative will have all your rights and duties under this Policy.

5. Vendors of Your Product -- Any person or organization who is a vendor of Your Product is an Insured, but only with respect to the vendor's liability for Damages, Bodily Injury or Property Damage resulting from the distribution or sale of Your Product in the regular course of the vendor's business and only if this insurance applies to such product (that is, the product must be included in the Products-Completed Operations Hazard). However, such vendor is not an Insured with respect to:

   a. any assumption of liability by such vendor in a contract or agreement.  This limitation does not apply to liability for **Damages, Bodily Injury** or **Property Damage** to which this insurance applies that such vendor would have in the absence of such contract or agreement;

   b. any representation or warranty by such vendor which is unauthorized by you;

   c. any chemical or physical change in **Your Product** made intentionally by such vendor;

   d. any **Damages** arising out of the vendor's sole negligence or willful misconduct;

   e. any repackaging**,** unless unpacked by the vendor solely for the purpose of inspection, demonstration or testing, or the substitution of parts under instruction from the manufacturer and then repacked in the original container;

f.    any demonstration, installation, servicing or repair operations, except such operations performed at the vendor's or prospective buyer's premises in connection with the sale of **Your Product**; or

g.    **Your Product** which, after distribution or sale by you, has been labeled or relabeled or used as a container, ingredient or part of any other thing or substance by or for the vendor.

However, no person or organization from whom you have acquired **Your Product**, or any container,

ingredient or part entering into, accompanying or containing **Your Product**, is an **Insured** under this provision.

6.    Life Sciences Product Sales Contractor **or** Life Sciences Product Services Contractor – **Any person (other than your** Employee**) or organization acting as a** Life Sciences Product Sales Contractor **or a** Life Sciences Product Services Contractor **for you, pursuant to a written contract or agreement between you and such contractor which requires you to provide such contractor with insurance such as that provided by this Policy is an** Insured**, but only:**

a.    with respect to the **Life Sciences Product Sales Contractor's** liability for **Damages**, **Bodily Injury** or **Property Damage** resulting from such contractor's dispensing, distribution, furnishing or sale in the regular course of the contractor's business of a **Life Sciences Product** which is **Your Product** and is included in the **Products-Completed Operations Hazard**; and

b.    with respect to the **Life Sciences Product Services Contractor's** liability for **Damages** resulting from **Wrongful Acts** within the regular course of such contractor's business.

c.    However, no **Life Sciences Product Sales Contractor** or **Life Sciences Services Contractor** is an **Insured** with respect to:

(i)    any assumption of liability by such contractor in a contract or agreement.  This limitation does not apply to liability for **Damages**, **Bodily Injury** or **Property Damage** to which this insurance applies, that the contractor would have in the absence of such contract or agreement;

(ii)   any representation or warranty by such contractor which is unauthorized by you;

(iii)  any chemical or physical change in **Your Product** made intentionally by such contractor;

(iv)   any **Damages** arising out of such contractor's sole negligence, recklessness or any willful misconduct, including willful violation of any law, rule or regulation; or

(v)    relabeling of **Your Product** by such contractor which, after distribution or sale by you, has been labeled or relabeled or used as a container, ingredient or part of any other substance or thing by or for such contractor.  This limitation does not apply to any relabeing of **Your Product** in the regular course of dispensing or furnishing the required amount or dosage of such product.

Such contractors will only be **Insureds** to the extent of the limits and coverage you are required to provide under the contract or agreement. However, no person or organization from whom you have acquired **Your Product**, or any container, ingredient or part entering into, accompanying or containing **Your Product**, is an **Insured** under this provision.

7.    **Institutional Review Board**—Any **Institutional Review Board** responsible for reviewing a **Human Clinical Trial** which  an **Insured** sponsors, co-sponsors or works on, but only with respect to the **Institutional Review Board's** vicarious liability for **Damages** resulting from **Your Product**, **Your Work** or your **Professional Services**.

However, no such **Institutional Review Board** is an **Insured** with respect to:

a.    any assumption of liability by such board (or any member of the board) in a contract or agreement. This limitation does not apply to liability for **Damages** to which this insurance applies, that such board (or member of such board) would have in the absence of such contract or agreement; or

b.    any **Damages** arising out of the **Institutional Review Board's** sole negligence, recklessness or willful misconduct, including willful violation of any law, rule or regulation.

C. Blanket Additional Insured

Any person or organization (other than those qualifying as Insureds above) to whom or to which you are obligated, by virtue of a written contract or agreement, to provide insurance such as that afforded by this Policy, is an Insured, but only:

1.  if you agreed to provide insurance to such person or organization as an Insured prior to the **Occurrence** or **Wrongful Act**;

2.  to the extent of the limits and coverage the contract or agreement requires you to provide; and

3.  with respect to such contractual obligee's vicarious liability arising solely out of **Your Product, Your Work** or your **Professional Services**. (Such contractual obligee may not be at fault, in whole or in part).

However, no such contractual obligee is an Insured with respect to the obligee's assumption of liability in a contract or agreement, unless such liability would exist in the absence of the contract or agreement.

D. **Newly Acquired or Created Organizations** – Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company, and over which you maintain majority ownership or majority interest, will qualify as a **Named Insured** if there is no other similar insurance available to that organization. However:

1.  coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the **Policy Period**, whichever is earlier; and

2.  coverage does not apply to **Bodily Injury, Property Damage**, or **Wrongful Acts** that occurred before you acquired or formed the organization.

No person or organization is an **Insured** with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a **Named Insured** in the Declarations or by Endorsement to this Policy.


**SECTION IV.  EXCLUSIONS**

A. **Exclusions Applicable to All Coverages (Except Where Otherwise Indicated)**

This insurance does not apply to **Damages** or **Defense Expenses** incurred in connection with a **Claim** under Insuring Agreements A or B, or to expenses otherwise covered under Insuring Agreements C, D, E or F, which are based upon, arising out of, directly or indirectly resulting from or in any way involving:

1.  **Contractual Liability**

Your assumption of liability or obligations in a contract or agreement.  This exclusion does not apply to liability or obligations:

a.  that you would have in the absence of the contract or agreement; or

b.  that you assumed in an **Insured Contract**, provided the **Bodily Injury, Property Damage** or **Wrongful Act** occurs subsequent to your execution of the **Insured Contract**. However, this exception for liability you assumed in an **Insured Contract** only applies to the extent of any limits or coverage required by the **Insured Contract**. Solely for the purposes of the coverage provided by this subparagraph (b), we will treat as **Damages** any attorneys fees or litigation expenses for which you are liable under such **Insured Contract**.

2.  **Unapproved Human Clinical Trial**

any exposure to material, upon or within human beings during a **Human Clinical Trial**, which exposure occurs after:

a.  a hold has been placed on the trial;

b.  approval of an Investigational **New Drug Application**, **Investigational Device Exception Application** or similar authorization applicable to the trial has been withdrawn; or

c.  the trial has been ordered to be discontinued by any governmental or regulatory authority having jurisdiction.

3. **Worker's Compensation and Similar Laws**

your actual or alleged obligations under workers compensation, disability benefits or unemployment compensation law or any similar law.

4. **Employer's Liability**

**Bodily Injury** to your **Employee** arising out of and in the course of the **Employee's**:

    a. employment by you; or

    b. performing duties related to the conduct of your business;

including a **Claim** by the spouse, child, parent, brother or sister of that **Employee** as a consequence of such **Bodily Injury**. Voluntary participation as a human test subject in a **Human Clinical Trial** will

not be deemed to be within the course of employment or to be the performance of duties as described in sub-paragraphs (a-b) of this exclusion.

This exclusion applies:

    c. whether you may be liable as an employer or in any other capacity; and

    d. to any obligation to share **Damages** with or repay someone else who must pay **Damages** because of the injury.

This exclusion does not apply to liability assumed by you under an **Insured Contract**.

5. **Pollution**

    a. actual, alleged or threatened exposure to, or generation, storage, manifestation, transportation, discharge, emission, release, dispersal, seepage, migration, escape, appearance, presence, reproduction, growth of, treatment, removal or disposal of, any **Pollutant**, except where such exposure, generation, storage, manifestation, transportation, discharge, emission, release, dispersal, seepage, migration, escape, appearance, presence, reproduction, growth, treatment, removal or disposal was caused by an unintentional fire or heat, smoke or fumes issuing from such unintentional fire. This exclusion applies regardless of whether or not the pollution was sudden, accidental, expected gradual, intentional or preventable;

    b. any fee, cost, expense or charge to test, monitor, clean up, remediate, mitigate, remove, contain, treat, detoxify, neutralize or rehabilitate any **Pollutant**;

    c. any fee, cost, expense, charge, fine or penalty incurred, sustained or imposed by order, direction, request or agreement of any court, governmental agency, regulatory body or civil, public or military authority in connection with or in any way relating to any **Pollutant**;

However this exclusion will not apply to any **Claim** for **Bodily Injury** or **Property Damage** caused by heat, smoke or fumes from a hostile fire.

6. **War**

**War**, whether or not declared, or any act or condition incident to **War**. **War** includes civil war, insurrection, rebellion or revolution.

7. **Prior Acts**

an **Occurrence**, **Wrongful Act** or **Circumstance**:

    a. disclosed in your application of insurance or any accompanying documents provided to us; or

    b. of which you had knowledge or information, prior to the first inception date of continuous claims-made coverage with us, which knowledge or information a reasonable person would believe might result in a **Claim**. This includes any **Occurrence**, **Wrongful Act** or **Circumstance** which began or took place before the inception date of the Policy and which is covered under any batch, integrated occurrence or extended coverage language in any other policy issued to you prior to the inception date of this Policy. We may, in our discretion, agree to cover such matter by Endorsement.

8. **Asbestos**

asbestos, regardless of whether the asbestos is:

   a.   airborne as a fiber or particle;

   b.   contained in a product;

   c.   carried or transmitted on clothing or by any other means; or

   d.   contained in or a part of:

      (i)   any building;

      (ii)   any building material;

      (iii)   any insulation product; or

      (iv)   any component part of any building, building material or insulation product.

9. **Nuclear Hazard**

any actual or alleged nuclear hazards, including nuclear fission, nuclear reaction, nuclear radiation, radioactive contamination or radioactive substance.  This exclusion applies to loss or damages:

   a.   for which the **Insured** is:

      (i)   protected under a nuclear energy liability insurance policy or which would have been protected under such policy if that policy's limits had not been used up;

      (ii)   required by law to maintain financial protection by the Federal Atomic Energy Act or any other such legislation;

      (iii)   entitled to indemnity from any government under any contract or agreement between the government and the **Insured**, or to which the **Insured** would have been entitled if this Policy had not been issued.

   b.   based upon or arising out of the hazardous properties of nuclear material if such material is:

      (i)   at or has been discharged or dispersed from any nuclear facility owned by, or operated by or on behalf of, any **Insured**; or

      (ii)   contained in spent fuel or waste at any time transported, handled, stored, disposed of, processed, treated, possessed or used by or on behalf of any **Insured**.

   c.   in any way related to the furnishing by an **Insured** of services, materials, parts or equipment  in connection with the planning, construction, maintenance, operation or use of any nuclear facility; or

   d.   based upon or arising out of the existence, required removal or abatement of radon or other naturally occurring radioactive materials present on or below the ground or emanating into a location owned, leased or under the care, custody or control of the **Insured**.

As used in this Exclusion, the following definitions apply:

Hazardous properties includes radioactive, toxic or explosive properties.

Nuclear material means source material, special nuclear material, or by-product material.

Source material, special nuclear material, and by-product material have the meanings given them by the United States Atomic Energy Act of 1954 or in any law amendatory thereof.

Spent fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

Waste means any waste material (a) containing by-product material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its facility included under the first two paragraphs of the definition of nuclear facility.

Nuclear facility means:

    a.  any nuclear reactor;

    b.  any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium; (ii) processing or utilizing spent fuel; or (iii) handling processing or packaging waste;

    c.  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

    d.  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

Nuclear reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

10. **Intellectual Property Law or Rights**

any actual or alleged violation, by any person or organization (including any **Insured**) of any **Intellectual Property Law or Right**.

11. **Mold**

any actual or alleged:

    a.  exposure to, or the manifestation, release, dispersal, seepage, migration, discharge, appearance, presence, reproduction or growth of, **Mold**;

    b.  cost, expense or charge to test, monitor, clean up, remediate, mitigate, remove, contain, treat, detoxify, neutralize, rehabilitate, or in any other way respond to or assess the effect(s) of **Mold**;

    c.  any cost, expense, charge, fine or penalty incurred, sustained or imposed by order, direction, request or agreement of any court, governmental agency, regulatory body or civil, public or military authority in connection with or in any way relating to **Mold**;

12. **Sexual Abuse, Harassment, Humiliation, Discrimination**

    a.  any actual or alleged sexual abuse, harassment, humiliation, molestation, assault or battery of any person, or

    b.  discrimination, including but not limited to, that based on race, color, sex, religion, age, disability, pregnancy, national origin or sexual orientation,

by an **Insured** or by another person for whose conduct the **Insured** may be legally responsible.

This exclusion applies regardless of the legal theory upon which the **Insured** is alleged to be liable for the conduct described in subparagraphs (a) and (b) of this exclusion, including negligent employment, supervision or investigation, or failure to supervise or investigate.

However, this exclusion will not apply to **Medical Expenses** covered under Insuring Agreement E.

13. **Banned Materials**

**Your Product** or **Your Work** that is manufactured, developed, designed, created, tested, sold, leased, licensed, rented, handled, marketed, distributed or disposed of by you or others on your behalf in known violation of any law, statute, ordinance or regulation.

14. **Dishonest, Fraudulent, Criminal or Malicious Acts**

    a.  willful misconduct or willfully dishonest, fraudulent, criminal or malicious act, error or omission by any **Insured**; or

    b.  willful violation by any **Insured** of any law, statute, ordinance, or regulation.

However, with the exception of a **Claim** alleging **Healthcare Fraud and Abuse**, we will defend the **Insured** against such **Suit,** unless or until it has been determined that this exclusion applies.  Determination of the applicability of this exclusion may be made by an admission or by a final adjudication in a proceeding constituting the **Claim** or in a proceeding separate from or collateral to any proceeding constituting the **Claim**. Under no circumstances will we pay **Defense Expenses** or **Damages** on a **Claim** for **Healthcare Fraud and Abuse**, regardless of who brings such **Claim.**

15. **Misappropriation of Funds**

the conversion, commingling, misappropriation or improper use of funds or other property, or the gaining of any personal profit or advantage to which the **Insured** is not legally entitled.

16. **Insured's Fees or Other Remuneration**

a dispute over fees, remuneration or other compensation charged  by the **Insured** for **Professional Services**.

17. **Insured's Capacity**

the **Insured's** acts in his/her capacity as a director (other than a medical director participating in the **Insured's** own **Human Clinical Trial**), officer or shareholder of any organization.

18. **Personal and Advertising Injury**

**Personal and Advertising Injury**, except and to the extent that such **Personal and Advertising Injury**:

   a.  arises out of a **Human Clinical Trial**; or

   b.  results in **Personal Information Protection Event Expenses**.

19. **Direct Patient Care/Medical Malpractice**

the rendering of, or failure to render, **Medical Services.** However, this exclusion does not apply to **Defense Expenses** or **Damages** paid by reason of:

   a.  the providing (without any expectation of remuneration) of emergency medical treatment, including cardiopulmonary resuscitation, at the scene of an accident, medical crisis or disaster by physicians, dentists, emergency medical technicians, paramedics or other licensed healthcare professionals employed by you;

   b.  the conduct of **Human Clinical Trials** by physicians and other licensed healthcare professionals, provided that they fully comply with applicable guidelines and written protocols;

   c.  instructions or advice you give concerning **Your Product**; or

   d.  a dangerous condition, defect, deficiency or inadequacy in **Your Product.**

20. **Performance Delay**

a delay by or on behalf of the **Insured** with respect to the performance of any contract or agreement, including a delay in delivering **Your Product** and a delay in performing **Your Work**.

21. **Off-Label Promotion**

your promotion of off-label or unapproved uses for drugs or medical devices approved by the Food and Drug Administration for other uses.

22. **Lead**

   1.  **Bodily Injury**, **Property Damage**, **Personal and Advertising Injury**  or other liability for past, present or future **Claims** or **Suits** arising in whole or in part, either directly or indirectly, out of the manufacture, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of, exposure to, ingestion of or testing for, lead whether or not the lead is or was at any time airborne as a particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion or found in any form whatsoever;

   2.  the costs of clean up or removal of lead or products and materials containing lead;

3. the costs of such actions as may be necessary to monitor, assess and evaluate the release or threat of same, or lead or products and materials containing lead;

4. the cost of disposal of lead substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize or mitigate damages to the public health or welfare or the environment, which may otherwise result; or

5. the cost of compliance with any law or regulation regarding lead.

**B. Exclusions Applicable to Products-Completed Operations Liability Insurance (Insuring Agreement A) and the Expense Reimbursement Insurance (Insuring Agreements C, D, E and F)**

This Policy will not apply to any **Damages** or **Defense Expenses** incurred in connection with a **Claim** under Insuring Agreement A, or to expenses otherwise covered under Insuring Agreements C, D, E or F, which are based upon, arising out of, directly or indirectly resulting from or in any way involving:

1. **Expected or Intended Injury**

   **Bodily Injury** or **Property Damage** intended by the **Insured** or that would be expected from the standpoint of a reasonable person in the circumstances of the **Insured**, even if the actual **Bodily Injury** or **Property Damage** is of a different degree or type than that intended or expected. This exclusion does not apply to:

   a. **Bodily Injury** resulting from the use of reasonable force to protect persons or property, or

   b. **Bodily Injury** which is intended or can be expected to result from reasonable use of **Your Product**, including **Bodily Injury** arising out of known side effects or known adverse reactions to **Your Product**.

2. **Property Damage to Property You Own or Property In Your Care, Custody or Control**

   **Property Damage** to:

   a. property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

   b. premises you sell, give away or abandon, if the **Property Damage** arises out of any part of those premises;

   c. property loaned to you;

   d. that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the **Property Damage** arises out of those operations; or

   e. that particular part of any property that must be restored, repaired or replaced because **Your Work** was incorrectly performed on it.

   Paragraphs a and d do not apply to expenses incurred to repair, replace, enhance, restore or maintain **Impaired Property** which are covered under Insuring Agreement D.

   Paragraph b of this exclusion does not apply if the premises are **Your Work** and were never occupied, rented or held for rental by you.

   Paragraph d does not apply to **Property Damage** included in the **Products-Completed Operations Hazard**.

3. **Property Damage to Your Product**

   **Property Damage** to **Your Product** arising out of it or any part of it.

4. **Property Damage to Your Work**

   **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard**. This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

5. **Property Damage to Impaired Property or Property Not Physically Injured**

**Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

    a.   a defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

    b.   a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to:

        (i)   the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use; or

        (ii)   expenses incurred to repair, update, replace, adjust or inspect **Impaired Property** which are otherwise covered under Insuring Agreement D.

6. **Recall of Products, Work or Impaired Property**

**Damages** claimed for any injury, loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    a.   **Your Product**;

    b.   **Your Work**; or

    c.   **Impaired Property**;

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it. However, this exclusion does not apply to any:

    d.   **Claim** for **Bodily Injury,** or

    e.   **Withdrawal Expenses** covered under Insuring Agreement C.

7. **Other Products**

manufacturing, handling, distribution, advertising, labeling, sale, application, ingestion, consumption, testing, exposure to or any use of any product or substance known as, made of, or containing any one or more the following:

    a.   Birth Control Contraceptives

    b.   Fenfluramine, Phentermine or Dexfenfluramine;

    c   Thalidomide

    d.   Latex;

    e.   Phenylpropanolamine (PPA)

    f.   Accutane or Isotretinonin

    g.   Silcone and/or Silica

    h.   diethylstilbestrol, or DES, or which has the same chemical formulary, or which is a stilbene derivative,

    i.   Ephedra, Mahuang, Ephedra sinica, Chines Ephedra, ephedrine, pseudophedrine, norpseudoephedrine,

    j.   Nefazadone,

    k.   Thimerosol;

    l.   Vaccines;

    m.   Hormone Replacement Therapy Products;

    n.   Selective Seratonating Reuptake Inhibitors (SSRI);

o.   DI(2-ethylhexyl)phthalate.

any other product or substance having a substantially similar formulation, structure, or function as the products listed above, by whatever name manufactured or marketed.

8. **Professional Services**

the rendering of or failure to render **Professional Services** by you or another party for whose conduct you may be legally responsible.  However, this exclusion does not apply to **Damages** or **Defense Expenses** resulting from **Your Work** as a **Life Sciences Product Sales Contractor** or a **Life Sciences Product Services Contractor**;

C. **Exclusions Applicable to Professional Liability Insurance (Insuring Agreement B) and to the Expense Reimbursement Insurance (Insuring Agreements C,D,E, and F)**

This Policy will not apply to:

1. **Products/Completed Operations Liability Claims**

any **Claim** which is covered under Insuring Agreement A of this Policy.


**SECTION V.   CONDITIONS**

We have no duty to provide coverage under this Policy unless you and any other involved **Insured** have fully complied with the Conditions contained in this Policy.

A. Your Duties in the Event of an **Occurrence**, **Wrongful Act**, **Circumstance**, **Claim** or **Suit**

1. **Notice of Circumstances.**

a. If, prior to the end of the **Policy Period**, any **Executive Officer**, member of your legal or risk management departments, or any other person charged with responsibility for your insurance administration, becomes aware of and provides us with written notice (in accordance with subparagraph b below) of an **Occurrence**, **Wrongful Act** or **Circumstance** which may reasonably result in a **Claim** or **Suit** to which this insurance applies, then any **Claim** or **Suit** which subsequently arises out of such **Occurrence**, **Wrongful Act** or **Circumstance** will be deemed made during the **Policy Period,**  provided that the **Claim** is made or the **Suit** is brought before:

(i)   the end of this **Policy Period**; or

(ii)  the period of a subsequent, continuous renewal or replacement of this insurance that is issued by us or by an affiliate of ours.

b. You must provide us with full particulars of the potential **Claim**, including, but not limited to:

(i)    the time, place and nature of the **Occurrence**, **Wrongful Act** or **Circumstance;**

(ii)   the identity of all potential claimants and **Insureds** involved;

(iii)  a description of the injury or **Damages** that may result from the **Occurrence**, **Wrongful Act** or **Circumstance;**

(iv)  the manner in which you first became aware of the **Occurrence**, **Wrongful Act**, **Circumstance;** and

(v)   the reasons you believe it may result in a **Claim.**

2. **Notice of Claim (Including a Suit)**

a. As a condition precedent to any right to coverage under this Policy, you must give us written notice of any **Claim** (including any **Suit**) first made against any **Insured** during the **Policy Period** or any applicable Extended Reporting Period as soon as practicable thereafter, but in no event later than:

(i)    with respect to a **Claim** first made during the Policy Period, thirty (30) days after the Policy expiration date; or

(ii) with respect to a **Claim** first made during an Extended Reporting Period, thirty (30) days after such **Claim** is first made.

b. You and any other involved **Insured** must also:

(i) immediately send us copies of any demands, notices, summonses or legal papers received in connection with the **Claim** or **Suit**;

(ii) authorize us to obtain records and other information;

(iii) cooperate with us in the investigation or settlement of the **Claim** or defense against the **Suit**; and

(iv) assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

c. No **Insured** will, except at that **Insured's** own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

d. Failure of an agent or **Employee** of the **Insured**, other than your **Executive Officers**, members of your legal or risk management departments or other persons responsible for your insurance administration, to notify us of an **Occurrence**, **Wrongful Act**, **Circumstance**, **Claim** or **Suit** that such person knows about will not affect the insurance afforded to you.

B. **Claim Made Date; Wrongful Acts Deemed Related**

A **Claim** will be deemed to have been made at the earlier of the following times:

1. when any **Executive Officer**, member of your legal or risk management departments or ay other person responsible for your insurance administration first receives written notice of such **Claim**; or

2. when we receive written notice of such **Claim**.

All **Claims** for **Damages** arising out of **Bodily Injury** to the same person, including **Damages** claimed by any person or organization for care, loss of services or death resulting at any time from such **Bodily Injury**, will be deemed to be one **Claim** and one **Occurrence**, regardless of the number of claimants and the number of **Insureds** against whom such **Claim** is made. Such **Claim** will be deemed to have been made at the time the first of those **Claims** is made against any **Insured**.

All **Claims** for **Damages** arising out **Property Damage** causing loss to the same person or organization will be deemed to be one **Claim** and one **Occurrence,** regardless of the number of claimants and the number of **Insureds** against whom such **Claim** is made. Such **Claim** will be deemed to have been made at the time the first of those **Claims** is made against any **Insured**.

All **Claims** for **Damages** arising out of one **Wrongful Act** or **Related Wrongful Acts**  shall be deemed to be one **Claim**, regardless of the number of claimants or the number of **Insureds** against whom such **Claims** are made. Such **Claim** will be deemed to have been made at the time of the first of those **Claims** is made against any **Insured**.

C. **Legal Action Against Us**

No person or organization has a right under this Policy:

1. to join us as a party or otherwise bring us into a **Suit** seeking **Damages** from an **Insured**; or

2. to sue us on this Policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an **Insured**, obtained after an actual trial or civil proceeding, or arbitration or other alternative dispute resolution  proceeding; but we will not be liable for remedies that are not payable under the terms of this Policy or for amounts that are in excess of the applicable limit of insurance.  An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

D. **Other Insurance**

If other valid and collectible insurance is available to you for a loss we cover under this Policy, our obligations are limited as follows:

1. Primary Insurance

This insurance is primary except when paragraph 2 below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in paragraph 3 below.

2. Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

a. that is effective prior to the beginning of the **Policy Period** shown in the Declarations of this insurance and applies to **Bodily Injury**, **Property Damage** or **Damages** on other than a claims-made and reported basis, if:

(i) no Retroactive Date is shown in the Declarations to this Policy; or

(ii) the other insurance has a **Policy Period** which continues after the Retroactive Date shown in the Declarations of this insurance;

b. that is a local foreign admitted policy which is a claims-made policy effective during the **Policy Period** or an occurrence based policy which provides coverage for the **Claim** at issue.

When this insurance is excess, we will have no duty to defend the **Insured** against any **Suit** if any other insurer has a duty to defend the **Insured** against that **Suit**. If no other insurer defends, we will undertake to do so, but we will be entitled to the **Insured's** rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

a. the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

b. the total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Policy.

3. Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

E. **Premium Payment; Premium Audit and Total Advance Premium**

1. The first **Named Insured** shown in the Declarations is responsible for the payment of all premiums, and will be the payee for any return premiums we pay.

2. We will compute all premiums for this Policy in accordance with our rules and rates.

3. The premium shown as the Total Advance Premium on the Declarations is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period. If the premium for this policy is a flat premium, it is not subject to adjustment, except that additional premiums may be required for any additional exposures and/or **Insureds** or as provided for in Condition I. Cancellation.  If the Policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium.  If the earned premium is greater than the Total Advance Premium, the first **Named Insured** will pay the difference to us, due and payable upon notice.  If the earned premium is less than the Total Advance Premium, we will retain the Total Advance Premium.

4. The first **Named Insured** must keep records of the information we need for premium computation and send us copies at such times as we may request.

F. **Representations**

By accepting this Policy, you agree that:

1. the statements in the application are accurate and complete;

2. those statements are based upon representations you made to us; and

3. we have issued this Policy in reliance upon your representations.

G. **Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first **Named Insured**, this insurance applies:

1. as if each **Named Insured** were the only **Named Insured**; and

2. separately to each **Insured** against whom **Claim** is made or **Suit** is brought.

H. **Transfer of Rights of Recovery Against Others to Us**

If the **Insured** has rights to recover from another party all or part of any payment we have made under this Policy, those rights are transferred to us. We will waive our subrogation rights against your client to the extent that, prior to a **Circumstance, Claim** or **Suit**, you had a written agreement to waive such rights. The **Insured** must do nothing after loss to impair our rights.  At our request, the **Insured** will bring **Suit** or transfer those rights to us and help us enforce them.

I. **Cancellation**

1. The first **Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this Policy by mailing or delivering to the first **Named Insured** written notice of cancellation at least:

   a. ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. ninety (90) days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first **Named Insured** at the last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation.  The **Policy Period** will end on that date.

5. If this Policy is cancelled, we will send the first **Named Insured** any premium refund due.  If we cancel, the refund will be pro rata.  If the first **Named Insured** cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

J.   **Changes**

This Policy and any attached endorsements contain all the agreements between you and us concerning the insurance afforded.  The first **Named Insured** shown in the Declarations is authorized to make changes in the terms of this Policy with our consent.  This Policy's terms can be amended or waived only by endorsement issued by us and made a part of this Policy.

K.   **Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this Policy at any time during the **Policy Period** and up to three years afterward.

L.   **Inspections and Surveys**

We have the right, but are not obligated to:

1.   make inspections and surveys at any time;

2.   give you reports on the conditions we find; and

3.   recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.  We do not make safety inspections.  We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.  And we do not warrant that conditions are safe or healthful or comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

M.   **Transfer Of Your Rights and Duties Under This Policy**

Your rights and duties under this Policy may not be transferred without our written consent, except in the case of death of an individual **Insured**.

If you die, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative.  Until your legal representative is appointed, any one having proper temporary custody of your property will have your rights and duties but only with respect to that property.

N.   **Change in Control**

1.   If the first **Named Insured** designated in the Declarations consolidates with or merges into, or sells all or substantially all of its assets to any person or entity; or

2.   if any person or entity acquires an amount of the outstanding ownership interests representing more than 50% of the voting or designation power for the election of directors of the first **Named Insured** designated in the Declarations, or acquires the voting or designation rights of such an amount of ownership interests;

this Policy will continue in full force and effect as to any **Bodily Injury, Property Damage** or **Wrongful Act** that occurred prior to the effective date of such transaction.  There will be no coverage afforded by this Policy for any **Bodily Injury, Property Damage** or **Wrongful Act** that occurs on or after the effective date such transaction.

O.   **Service of Suit**

The Underwriter hereby designates the Director of the Department of Insurance in the state in which this Policy is issued, and his/her successor(s) in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the **Insured** arising under or out of this Policy.

P.   Adverse Events **Reporting**

Reporting an **Adverse Event** to us, another insurer or a governmental or regulatory authority, in itself, does not constitute:

1.   a conclusion that **Your Product** caused or contributed to such event;

2.   an admission or assumption of liability;

3. a notice as described under Condition A1, Notice of **Circumstances**;

4. knowledge of a circumstance that would be expected to result in payment under this insurance; or

5. that injury or damage was expected or intended.

Q. **Bankruptcy**

Your bankruptcy or insolvency will not relieve us of our obligations under this Policy.

**SECTION VI.  EXTENDED REPORTING PERIODS**

A. We will provide one or more Extending Reporting Periods, as described below, if:

1. this Policy is cancelled (for any reason other than non payment of premium) or not renewed; or

2. we renew or replace this Policy with insurance that:

a. has a Retroactive Date later than the date shown in the Declarations; or

b. does not apply on a claims-made and reported basis.

B. The Extended Reporting Periods described in this Condition will not extend the **Policy Period** or change the scope of coverage provided. They apply only to **Bodily Injury**, **Property Damage** or a **Wrongful Act** that occurs on or after the applicable Retroactive Date shown in the Declarations and before the end of the **Policy Period**. Once in effect, Extended Reporting Periods may not be cancelled.

C. A 60 Day Basic Extended Reporting Period is automatically provided for no additional charge. This period starts at the end of the **Policy Period** and lasts for sixty days. The Basic Extended Reporting Period does not apply to **Claims** that are covered under any subsequent insurance you purchase, or that would be covered by such insurance, but for exhaustion of the amount of insurance applicable to such **Claims**.

D. A Supplemental Extended Reporting Period of 7 years is available, but only by an endorsement and for an extra charge to be determined by us.  This Supplemental Extended Reporting Period starts when the Basic Extended Reporting Period, set forth in Paragraph C. above, ends.

You must request the Supplemental Extended Reporting Period endorsement in writing within sixty (60) days of the expiration date of the **Policy Period**.  The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due. We will determine such additional premium in accordance with our rules and rates then in effect. In doing so, we may take into account the following:

1. the exposures insured;

2. previous types and amounts of insurance;

3. limits of Insurance available under this Policy for future payment of damages; and

4. other related factors.

The additional premium will not exceed 250% of the annual premium for this Policy.

The endorsement shall set forth the terms, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for **Claims** first made during such period will be excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

E. Neither the Basic Extended Reporting Period nor the Supplemental Extended Reporting Period renews, reinstates or increases the Limits of Insurance.

**SECTION VII.      DEFINITIONS**

A. **Adverse Event** includes any:

1. of the following types of outcomes in any person, regardless of whether or not such outcome is expected or intended:

a. congenital anomaly or birth defect;

  b. death;

  c. disability or incapacity;

  d. hospitalization; or

  e. life threatening disease, injury or sickness;

 2. intervention to prevent any outcome described in Paragraph 1. above;

 3. malfunction of **Your Product** that may give rise to any outcome described in paragraphs 1a. or 1b. above; or

 4. condition that may give rise to any outcome described in paragraphs 1(a-c) above, requiring notification to a governmental or regulatory authority.

B. **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

 1. notices that are published include materials placed on the Internet or on similar electronic means of communication; and

 2. regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an **Advertisement**.

C. **Auto** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment.  But **Auto** does not include **Mobile equipment**.

D. **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death, mental injury and mental anguish resulting from any of these at any time. **Bodily injury** also means bodily injury, sickness, disease, mental injury or mental anguish sustained by any relative of that person as result of such **Bodily Injury**.

E. **Circumstance** means an **Occurrence**, event, situation, act, error or omission which you reasonably expect might lead to a **Claim**.

F. **Claim** means a written demand for **Damages,** services or other non-monetary relief. A **Claim** includes a **Suit**.

G. **Class I Recall** means:

 1. a **Class I Product Recall** as defined by the applicable governmental authority in the United States; or

 2. any equivalent recall provisions outside of the United States, which provisions address the:

  a. removal from the market of:

   (i) **Your Product**;

   (ii) a product in which **Your Product** is a component; or

   (iii) a product on which **Your Work** was performed; or

  b. a correction of such product because there is a reasonable probability that the continued use of, or exposure to such product, without correction, will cause serious adverse health consequences or death.

Such recall or removal may be taken voluntarily by or on behalf of the **Insured**, or required by a government entity acting in accordance with applicable federal, state, regional or local law.

H. **Cognitively Impaired** means suffering from any:

 1. alcohol or "drug" dependency;

 2. degenerative disease affecting the brain;

 3. dementia or other similar disorder;

 4. disabling physical handicap;

 5. developmental disability, developmental delay or other similar disorder;

6. neurosis, psychosis or other similar disorder;

7. terminal physical illness; or

8. other condition, disease, injury or sickness that diminishes a human being's capacity for judgment or reasoning.

I. **Cosmetic** means an article that is intended to be applied to the human body for altering appearance, beautifying, cleansing or promoting attractiveness.

J. **Coverage Territory** means:

1. the United States of America (including its territories and possessions), Canada or Puerto Rico;

2. international waters or airspace, provided the **Bodily Injury, Property Damage** or **Wrongful Act** does not occur in the course of travel or transportation to or from  any place not included in paragraph (a) above; or

3. elsewhere in the world;  However:

   a. if coverage for a **Claim** or **Suit** under this Policy is in violation of any of the United States of America's economic or trade sanctions laws or regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that **Claim** or **Suit** shall be null and void; and

   b. we have the option, but not the duty, to investigate any **Claim** made, or defend any **Suit** brought, in a foreign jurisdiction (as used here, a foreign jurisdiction is a jurisdiction besides the United States of America, Canada or Puerto Rico).  However, we will reimburse the **Named Insured** for **Damages** or **Defense Expenses** it incurs with our permission on such foreign **Claim** or **Suit** if and to the extent such **Damages** and **Defense Expenses** are covered.  This insurance is specifically excess of any local foreign admitted policy in place and applicable to such **Claim** or **Suit**.

K. **Damages** mean compensatory damages in excess of the applicable Deductible or Self-Insured Retention and within the applicable Limit of Liability which are incurred by any **Insured** with the Company's prior written consent. **Damages** do not include:

1. civil or criminal fines, sanctions, penalties or forfeitures;

2. the multiplied portion of multiplied damage awards;

3. non-monetary, injunctive, declaratory or equitable relief or amounts owing in order to effectuate such relief;

4. the return, refund or restitution of fees or other charges for **Your Product**, **Your Work** or your services;

5. amounts incurred to modify, redesign or correct **Your Product**, **Your Work** or your services, other than expenses covered under Insuring Agreement D.

6. amounts that are not insurable under any applicable law; or

7. plaintiff's attorney fees associated with any of the remedies listed in (1) through (6) above.

L. **Defense Expenses** mean the reasonable fees of attorneys, experts and consultants and other costs and expenses incurred in investigating a **Claim** or defending a **Suit** (other than costs and expenses of our **Employees**). **Defense Expenses** also include:

1. up to $250 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the **Bodily Injury** liability coverage applies. (We do not have to furnish these bonds);

2. the cost of bonds to release attachments, but only for bond amounts within the applicable limit of liability.  (We do not have to furnish these bonds);

3. all reasonable expenses incurred by you at our request to assist us in the investigation or defense of the **Claim** or **Suit**, including actual loss of earnings up to $250 a day because of time off from work;

4. all costs imposed against you in the **Suit**;

    5.   pre-judgment interest awarded against you on that part of the judgment we pay. If we make an offer to pay the applicable limit of liability, we will not pay any pre-judgment interest based on that period of time after the offer; and

    6.   all interest on the full amount of the covered portion of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the covered portion of the judgment that is within the applicable limit of liability.

M.  **Device family** means a **Medical Device** or a group of such devices manufactured by or for the same organization and having the same basic design and performance characteristics and intended function and use.

N.  **Drug** means a biologic or synthetic article, other than conventional food, that is intended to achieve a chemical action upon within the human body:

    1.   for use in the cure, diagnosis, mitigation, prevention or treatment of disease, injury or sickness in human beings;

    2.   to affect any function or structure of the human body; or

    3.   that is recognized as such in the official:

        a.   *Homeopathic Pharmacopoeia*;

        b.   *National Formulary*;

        c.   *United States Pharmacopoeia*; or

        d.   supplements to any of these.

O.  **Employee** means any person who is on the **Insured's** regular payroll, with federal and/or state taxes withheld, and whose labor or service is engaged by and directed by the **Insured**. **Employee** includes a **Leased Worker**, but does not include a **Temporary Worker** or an independent contractor. An **Employee's** status as an **Insured** will be determined as of the date of the **Occurrence** or **Wrongful Act** upon which a **Claim** involving the **Employee** is based.

P.  **Executive Officer** means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

Q.  **Healthcare Fraud and Abuse** means any actual or alleged:

    1.   fraud, abuse or false claim with respect to,

    2.   overbilling, overpayment, recoupment, miscoding or improper processing in connection with, or

    3.   any other failure to comply with any terms, conditions, laws, rules, regulations, procedures or other requirements of or relating to,

any federal, state or local health insurance plan or program, including without limitation the Medicare, Medicaid and Social Security programs, regardless of whether such conduct is intentional, negligent or otherwise.

R.  **HIPAA Violation** means any proceeding brought by a government entity (other than proceedings in the ordinary course of the **Insured's** business) alleging a violation of the privacy provisions of the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

S.  **Hostile Fire** means a fire which becomes uncontrollable or breaks out from where it was intended to be.

T.  **Human Clinical Trial** means testing of a **Life Sciences Product** upon or within human beings to establish the effectiveness or safety of such **Life Sciences Product**, and includes providing information necessary to obtain the informed consent of human beings to participate in such testing and other activities taken in connection with the testing, provided that:

    1.   the **Insured** makes all filings required by law or regulations and receives all necessary authorizations in connection therewith;

    2.   the trial is approved by the appropriate **Institutional Review Board** or similar body; and

    3.   the **Insured** has not recklessly or willfully violated or consented to any violation of any agreement, contract, law, procedure, protocol or regulation applicable to the conduct of the trial.

U.  **Human Clinical Trials That Must Be Underwritten And Approved To Be Covered** means **Human Clinical Trials** that the **Insured** sponsors, co-sponsors or works on, or for which the **Insured** has assumed any obligation assigned to a sponsor under any applicable law or regulation, that involve trial participants who, during any part of the trial or consent period, are **Cognitively Impaired**, pregnant, or under 18 years of age.

This definition does not apply to a trial that has been described to us by you in the application for this insurance, to the extent that we have agreed to provide coverage in connection with such trial.

V.  **Impaired Property** means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

1.  it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2.  you have failed to fulfill the terms of a contract or agreement;

3.  if such property can be restored to use by the repair, replacement, adjustment or removal of **Your Product** or **Your Work**, or your fulfilling the terms of the contract or agreement.

W.  **Information and Network Technology Product** means:

1.  communication, computer, electronic, Internet, information, network or website;

    a.  equipment or parts;

    b.  programs or systems; and

2.  software, data or other information that is in electronic form.

X.  **Information and Network Technology Service** means analysis, design, integration, management, maintenance, processing, programming, repair or support services in connection with an **Information and Network Technology Product**.

Y.  **Institutional Review Board** means a board, committee, group or similar organization or an ethics committee designated, directed or requested by an institution or other person or organization to review a **Human Clinical Trial**, including any approval or periodic review of any such **Human Clinical Trial**.

Z.  **Insured** means the **Named Insured** and any other person or organization that qualifies as such under Section III of this Policy.

AA.  **Insured Contract** means:

1.  a contract for lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an **Insured Contract**;

2.  a sidetrack agreement;

3.  any easement or license agreement;

4.  an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5.  an elevator maintenance agreement;

6.  that part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay damages for a **Wrongful Act** or for **Bodily Injury** or **Property Damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An **Insured Contract** does not include:

    a.  an oral contract or agreement;

      b.  that part of any contract or agreement that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

          (i)  preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, design or specifications; or

          (ii)  giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      c.  that part of any contract or agreement that indemnifies any party for fire damage to premises rented or loaned to you.

BB.  **Intellectual Property Law or Right** means any:

    1.  certification mark, copyright, patent or trademark (including collective or service marks);

    2.  right to, or judicial or statutory law recognizing an interest in, any trade secret or confidential or proprietary non-personal information;

    3.  other right to, or judicial or statutory law recognizing an interest in, any expression, idea, likeness, name, slogan, style of doing business, symbol, title, trade dress or other intellectual property; or

    4.  other judicial or statutory law concerning piracy, unfair competition or other similar practices.

CC.  **Leased Worker** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. **Leased Worker** does not include a **Temporary Worker**.

DD.  **Life Sciences Product** means a **Cosmetic**, **Drug** or **Medical Device**.

EE.  **Life Sciences Product Sales Contractor** means a person or organization engaged to provide service, advice or instruction in connection with the dispensing, distribution, furnishing or sale of a **Life Sciences Product.**

FF.  **Life Sciences Product Services** means clinical, design or developmental review, laboratory, research service, or advice or instruction in connection with a **Life Sciences Product**.

GG.  **Life Sciences Product Services Contractor** means a person or organization engaged to provide **Life Sciences Product Services**.

HH.  **Loading or Unloading** means the handling of property:

    1.  after it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or **Auto**;

    2.  while it is in or on an aircraft, watercraft or **Auto**; or

    3.  while it is being moved from an aircraft, watercraft or **Auto** to the place where it is finally delivered; but **Loading or Unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or **Auto**.

II.  **Medical Device** means an apparatus, contrivance, implant, implement, instrument, in vitro reagent, machine or other similar or related article, including an accessory, component or part, that is:

    1.  intended for use in the cure, diagnosis, mitigation, prevention or treatment of disease, injury or sickness in human beings;

    2.  intended to affect any function or structure of the human body; or

    3.  recognized as such in the official:

        a.  National Formulary;

        b.  United States Pharmacopoeia; or

        c.  supplements to any of these;

which does not achieve any of its primary intended purposes through chemical action upon or within the human body and which is not dependent upon being metabolized for the achievement of any of its primary purposes.

JJ. **Medical Expenses** mean expenses incurred for treatment administered to a **Human Clinical Trial** participant at the time of or after an approved **Human Clinical Trial**.  However, such expenses do not include any amounts incurred for any planned concurrent treatment of side effects as set forth in the clinical trial protocol.

KK. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads:

2. vehicles maintained for use solely on or next to premises you own or rent;

3. vehicles that travel on crawler treads;

4. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a. power cranes, shovels, loaders, diggers or drills; or

    b. road construction or resurfacing equipment such as graders, scrapers or rollers.

5. vehicles not described in 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b. cherry pickers and similar devices used to raise or lower workers;

6. vehicles not described in 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment**, but will be considered **Autos**:

    a. equipment designed primarily for:

        (i) snow removal;

        (ii) road maintenance, but not construction or resurfacing; or

        (iii) street cleaning;

    b. cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers;  and

    c. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

LL. **Medical Services** means medical or other health care services or treatment provided to any individual; the furnishing or dispensing of medications, drugs, blood, blood products, or medical, dental or psychiatric supplies, equipment, or appliances in connection with such care; the furnishing of food or beverages in connection with such care; the providing of counseling or other social services in connection with such care; and the handling of, or the performance of post-mortem examinations on, human bodies.

MM. **Mold** means mold, mildew, spores, mycotoxins, fungi, organic pathogens or other micro organisms of any type, nature or description whatsoever.

NN. **Named Insured** means the person or organization whose name appears in Item 1 of the Policy Declarations.

OO. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

PP. **Personal and Advertising Injury** means injury, including consequential **Bodily Injury**, arising out of one or more of the following offenses:

1. false arrest, detention or imprisonment;

2. malicious prosecution;

3. the wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. oral or written publication, in any manner, of material that slanders or libel's a person or organization or disparages a person's or organization's good, products or services;

5. oral or written publication, in any manner, of material that violates a person's right of privacy;

6. the use of another's advertising idea in your **Advertisement**; or

7. infringing upon another's copyright, trade dress or slogan in your **Advertisement.**

QQ. **Personal Information Protection** means maintaining the confidentiality of information regarding **Medical Services** or information obtained in the provision of **Professional Services** and limiting the release or use of such information in conformance with requirements of law.

RR. **Personal Information Protection Event** means any **HIPAA Violation**, or any other failure to maintain the confidentiality of information regarding **Medical Services** or other information obtained in the provision of **Professional Services** or unauthorized release or use of such information.

SS. **Personal Information Protection Event Expenses** mean reasonable fees and costs of attorneys, experts and consultants (not including third-party media consultants) incurred in the management or investigation of an actual or alleged **Personal Information Protection Event**. **Personal Information Protection Event Expenses** include costs incurred to notify affected parties of the confidentiality breach and for credit monitoring, if applicable. **Personal Information Protection Event Expenses** do not include any remuneration, salaries or benefit expenses of the **Insured** or any regulatory or administrative fines or penalties imposed upon an **Insured** as a result of a **Personal Information Protection Event.**

TT. **Policy Period** means the period of time from the inception of the Policy to the earliest of the expiration date or effective date of a cancellation, if any.

UU. **Pollutants** mean any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, biological and other etiologic agents or materials, genetically engineered materials, teratogenic, carcinogenic and mutagenic materials and waste.  Waste includes material to be recycled, reconditioned, or reclaimed.

VV. **Products-Completed Operations Hazard:**

1. includes all **Bodily Injury** and **Property Damage** occurring away from premises you own, occupy or rent and arising out of **Your Product** or **Your Work,** except:

    a. products that are still in your physical possession; or

    b. work that has not yet been completed or abandoned.  However, **Your Work** will be deemed completed at the earliest of the following times:

        (i) when all of the work called for in your contract has been completed;

        (ii) when all of the work to be done at the job site has been completed if your contract calls for  work at more than one job site; or

        (iii) when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

2. does not include **Bodily Injury** or **Property Damage** arising out of:

    a. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the **Loading or Unloading** of that vehicle by any **Insured**;

    b. the existence of tools, uninstalled equipment or abandoned or unused materials; or

3. with respect to **Human Clinical Trials** covered under this Policy, **Bodily Injury** or **Property Damage** arising out of **Your Product** used in such trial, whether or not in your physical possession, is included within the **Products-Completed Operations Hazard**.

WW. **Professional Services** means services of a professional nature performed by you or any other **Insured** on your behalf, including advice given by you with respect to the use of **Your Product** or **Your Work** for a fee, remuneration or other consideration in connection with a **Life Sciences Product**.

XX. **Property Damage** means:

1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the **Occurrence** that caused it.

For purposes of this insurance, tangible property does not include any electronic data.  Electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from, computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

YY. **Related Wrongful Acts** means two or more **Wrongful Acts** involving the same or related facts, circumstances, situations, events, transactions, causes or the same or related series of facts, circumstances, situations, events, transactions or causes, whether related logically, causally, or in any other way. **Related Wrongful Acts** will be deemed to have occurred at the time of the earliest such **Wrongful Act** took place.

ZZ. **Subject** means any human being who enrolls as a participant in a **Human Clinical Trial** to which this insurance applies.

AAA. **Suit** means a civil proceeding seeking recovery of **Damages** (or **Damages** plus services or other non-monetary relief) because of a **Wrongful Act**, **Bodily Injury** or **Property Damage** to which this insurance applies. **Suit** includes a civil legal proceeding as well as an arbitration proceeding or alternative dispute resolution proceeding in which such **Damages** are claimed and to which the insured must submit or does submit with our consent.  **Suit** does not include a criminal proceeding.

BBB. **Temporary Worker** means a person who is furnished to you to substitute for a permanent **Employee** on leave or to meet seasonal or short-term workload conditions.

CCC. **Volunteer Worker** means a person who is not your **Employee**, and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

DDD. **Withdrawal Expenses** means reasonable and necessary expenses to effectuate a **Class 1 Product Recall** and regain control over **Your Products**, including but not limited to:

1. costs and expenses incurred on communications and notices to the public, regulators or direct accounts, regarding the recall, whether in broadcast, electronic, printed or internet format;

2. costs and expenses incurred to transport, store and dispose of **Your Products**, as a result of the recall; and

3. costs and expenses incurred over and above the normal salaries and expenses of **Your Employees,** provided such costs and expenses are necessary to:

    a. ensure the recall is completed within a reasonable time; or

    b. remove **Your Product** from a specific location or another product in which **Your Product** is a component part.

4. fees paid to public relations or other consultants to implement the recall in a manner designated to minimize the economic impact of the recall on the **Insured**; and

5. fees paid to attorneys or consultants retained to challenge government communications requesting or ordering a **Class I Product Recall**, provided that you obtain our written consent before incurring such fees.

**Withdrawal Expenses** do not include the cost of removing **Your Product** from a person in which such product has been medically implanted.

EEE. **Your Product** means:

1. any goods or products, including **Information And Network Technology Products** and **Life Sciences Products**, other than real property, which are manufactured, sold, handled, distributed or disposed of by:

   a. you;

   b. others trading under your name; or

   c. a person or organization whose business or assets you have acquired; and

2. containers (other than vehicles), materials, parts, or equipment furnished in connection with such goods or products;

3. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

4. the providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

FFF. **Your Work** means:

1. work or operations, including **Information and Network Technology Services** and **Life Sciences Product Services,** performed by you or on your behalf or a person or organization whose business or assets you have acquired; and

2. materials, parts or equipment furnished in connection with such work or operations.

3. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

4. the providing of or failure to provide warnings or instructions.

GGG. **Wrongful Act** means any actual or alleged negligent act, error or omission in the rendering of, or failure to render **Professional Services** to which this insurance applies.

This Policy shall not be valid unless signed at the time of issuance by an authorized representative of the Insurer, either below or on the Declarations page of the policy.

Ironshore Specialty Insurance Company by:

Secretary                                      President



## IRONSHORE SPECIALTY INSURANCE COMPANY

Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement # 1**

**Policy Number:** 002862800                                 **Effective Date of Endorsement:** July 22, 2016
**Insured Name:**  KVK-Tech, Inc.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MANDATORY DESIGNATED PRODUCTS EXCLUSION (PRIMARY)

In consideration of the premium charged, it is agreed to and understood that Section IV. EXCLUSIONS B. Exclusions Applicable to Products – Completed Operations Liability Insurance, EXCLUSION 7. Other Products is amended by adding the products listed below:

p. Metoclopramide / Reglan
q. Propoxyphene / Darvon / Darvocet
r. Fentanyl / Fentanyl Patches
s. Yaz / Yasmin
t. Pioglitazone HCI (Actos)
u. Bisphosphonates (Fosamax)

All other terms and conditions of this Policy remain unchanged.

_____                    October 6, 2016
Authorized Representative                                   Date

LFS.END.143 (12.11 ed )



## IRONSHORE SPECIALTY INSURANCE COMPANY

Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement # 2**

**Policy Number:** 002862800                                  **Effective Date of Endorsement:** July 22, 2016
**Insured Name:** KVK-Tech, Inc.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## NAMED INSURED AND RETROACTIVE DATE ENDORSEMENT

It is agreed that:

1.  The Named Insured and address shown in the  Declarations are amended by adding the following organization (s), but solely with respect to the corresponding Retroactive Date specified below:

2.  The Retroactive Date specified in the Declarations is deleted and the following Retroactive Dates are inserted, but solely with respect to the corresponding Named Insured specified below:

| Named Insured | Retroactive Date |
|---|---|
| KVK Opco, Inc. | N/A |
| Avanthi, Inc. | N/A |
| GDPR, LLC | N/A |
| Allantra, Inc. Corp. | N/A |
| Varam, Inc. | N/A |
| Vamsy, Inc. | N/A |

All other terms and conditions of this Policy remain unchanged.

_____                    October 6, 2016
Authorized Representative                                          Date

LFS.025 (3.10 ed)



## IRONSHORE SPECIALTY INSURANCE COMPANY

Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement # 3**

**Policy Number:** 002862800                                    **Effective Date of Endorsement:** July 22, 2016
**Insured Name:** KVK-Tech, Inc.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT TO SECTION IV. EXCLUSIONS

In consideration of the premium charged, it is agreed **that Section IV. EXCLUSIONS, A. Exclusions Applicable to All Coverages**, is amended by deleting the exclusions as indicated below:

| NAME OF PRODUCT | CHECK IF DELETED |
|---|---|
| (11) Mold | ☐ |
| (22) Lead | ☐ |

In consideration of the premium charged, it is agreed that **Section IV.  EXCLUSIONS B, Exclusions Applicable to Products – Completed Operations Liability Insurance, EXCLUSION 7, Other Products** is amended by deleting the products(s) indicated below:

| NAME OF PRODUCT | CHECK IF DELETED |
|---|---|
| a.   Birth Control Contraceptives | ☐ |
| b.   Fenfluramine, Phentermine or Dexfenfluramine | ☒ |
| c.   Thalidomide | ☐ |
| d.   Latex | ☐ |
| e.   Phenylpropanolamine (PPA) | ☐ |
| f.   Accutane and/or Isotretinoin | ☐ |
| g.   Silicone and/or Silica | ☐ |
| h.   Diethylstilbestrol, or DES or which has the same chemical formulary, or which is a stilbene derivative | ☐ |
| i.   Ephedra, Ma Huang, Ephedra sinica, Chinese Ephedra, Ephedrine, Pseudoephedrine, norpseudoephedune. | ☒ |
| j.   Nefazadone | ☐ |
| k.   Thimersol | ☐ |

| | | |
|---|---|---|
| l. | Vaccines | ☐ |
| m. | Hormone Replacement Therapy Products (HRT's) | ☐ |
| n. | Selective Seratonatin Reuptake Inhibitors (SSRI) | ☐ |
| o. | DEHP (Di (2-ethyl/hexyl) phthalate | ☐ |

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

October 6, 2016
Date



## IRONSHORE SPECIALTY INSURANCE COMPANY

Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement #** 4

**Policy Number:** 002862800
**Insured Name:**  KVK-Tech, Inc.

**Effective Date of Endorsement:** July 22, 2016

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BATCH OCCURENCE ENDORSEMENT

**SECTION V. CONDITION B** is amended to include the following:

1.     All **Claims** arising out of **Bodily Injury**, **Property Damage** or **Personal and Advertising Injury** to two or more persons, organizations or properties which is directly or directly attributable to the same actual or alleged event, condition, cause, defect, hazard, advice or decision in the design, formulation, manufacturing, distribution, sale, testing, use, operation, maintenance, repair or replacement of **Your Product** or **Your Work**, will be deemed to be one **Claim** and one **Occurrence**,  regardless of when and where injury occurs or the number of **Bodily Injury**, **Property Damage** or **Personal and Advertising Injury** will be deemed to be one **Claim** and one **Occurrence** (hereinafter referred to as "**Batch Occurrence**"). All **Claims** for **Damages** from the **Batch Occurrence** shall be deemed to have been made at the time the first of those **Claims** was made against any **Insured**, subject always to the following provisions:

a)  If the first **Claim** for **Damages** arising from a **Batch Occurrence** is first made against an **Insured** during the **Policy Period** (or the 60 Day Basic Extending Reporting Period, if applicable), subsequent **Claims** arising out of that **Batch Occurrence** shall attach against the insurance stated in the Declarations, regardless of whether such subsequent **Claims** are made during the **Policy Period** or at any time thereafter. This Endorsement shall not be construed to increase or reinstate the Limits of Liability of the Policy. If any **Claim** arising from a **Batch Occurrence** is covered under another policy, including a prior policy, this Policy will not cover any **Bodily Injury**, **Property Damage** or **Personal and Advertising Injury** arising there from.

Subject to the provisions of **SECTION V.** of the Policy, you shall still retain the right to purchase the Supplemental Extended Reporting Period, but this Supplemental Extended Reporting SHALL IN NO EVENT APPLY to any **Claims** which attach under a **Batch Occurrence** outlined in the preceding paragraph.

Notwithstanding the foregoing, in no event will any **Claim or Claims** arising out of or related to Pioglitazone/Metformin be deemed a **Batch Occurrence** under this Policy and shall not be subject to any terms, conditions, or limitations of this endorsement.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____                     October 6, 2016
                                                            _____
Authorized Representative                                   Date



**IRONSHORE SPECIALTY INSURANCE COMPANY**

Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement #** 5

**Policy Number:** 002862800                                **Effective Date of Endorsement:** July 22, 2016
**Insured Name:**  KVK-Tech, Inc.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# OFAC COMPLIANCE NOTICE

Payment of Loss under this Policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

All other terms and conditions of this Policy remain unchanged.

_____                        October 6, 2016
Authorized Representative                                       Date



## IRONSHORE SPECIALTY INSURANCE COMPANY

Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement #** 6

**Policy Number:** 002862800                    **Effective Date of Endorsement:** July 22, 2016
**Insured Name:**  KVK-Tech, Inc.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED ENDORSEMENT

In consideration of the premium charged, it is agreed that **SECTION III. WHO IS AN INSURED, is** amended with the addition of the following:

**E.    Specified Additional Insureds**

The organizations listed below are **Insureds** under the Policy to the extent that you are obligated, by virtue of a written contract or agreement, to provide insurance such as that afforded by this Policy, is an **Insured**, but only:

1.    if you agreed to provide insurance to the organizations as an **Insured** prior to the **Occurrence** or **Wrongful Act**;

2.    to the extent of the limits and coverage the contract or agreement requires you to provide; and

3.    with respect to such contractual obligee's vicarious liability arising solely out of **Your Product**, **Your Work** or your **Professional Services**. (Such contractual obligee may not be at fault, in whole or in part)**.**

However, no such contractual obligee is an **Insured** with respect to the obligee's assumption of liability in a contract or agreement, unless such liability would exist in the absence of the contract or agreement.

| Additional Insured | Address |
|---|---|
| Henry Schein, Inc. | c/o Cert Focus<br>PO Box 140528<br>Kansas City, MO 64114 |

All other terms and conditions of this Policy remain unchanged.

_____                    October 6, 2016
Authorized Representative                    Date

ELECTRONICALLY FILED
5/26/2021 4:56 PM
02-CV-2021-900918.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK



# Navigators

2017 POLICY

# Thank you
## for being
## our policyholder

**Exhibit "C"**





# NAVIGATORS INSURANCE COMPANY

THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE BASIS.
PLEASE READ THE ENTIRE POLICY CAREFULLY.

## DECLARATIONS

Attaching to and forming part of

## FOLLOWING FORM EXCESS LIABILITY POLICY

IN RETURN FOR THE PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

Policy Number:                     BO17LEX0BECP4NV

Producer Number:               WILL7062

Renewal of Policy Number:   PH16LEX0BECP4NC

Insuring Company:     Navigators Insurance Company        Producer:   Willis of Pennsylvania, Inc.
                      One Penn Plaza                                  100 Matsonford Rd., Bldg 5, Ste 200
                      New York, NY 10119                              Radnor, PA 19087

1.   Named Insured:      KVK Tech, Inc.
     Address:            110 Terri Drive, Suite 200
                         Newtown, PA 18490

2.   Policy Period:      From 08/21/2017 To 08/21/2018
                         12:01AM STANDARD TIME AT THE ADDRESS SHOWN IN NUMBER 1 ABOVE.

3.   Limits of Insurance:   $5,000,000 Each Occurrence - including Claims Expenses.
                            $5,000,000 Aggregate – including Claims Expenses.



4.      Schedule of Underlying Insurance:

Controlling Underlying Insurance

| Coverage | Carrier | Policy Term | Retroactive Date | Limits |
|---|---|---|---|---|
| Products – Completed Operations Liability | Ironshore Specialty Insurance Company<br><br>Policy # 002862801 | 08/21/2017 to 08/21/2018 | 02/01/2007: $5m<br><br>08/21/2009: $5m xs $5m<br><br>08/21/2012: $5m xs $10m | $15,000,000 Each Occurrence/$15,000,000 Aggregate<br><br>Deductible: $100,000 Each Occurrence/$500,000 Aggregate |

Total Underlying Limits:      $15,000,000 each occurrence / $15,000,000 aggregate, excess of retention.

5.      Premium:              $48,600 Policy Term Premium, subject to Minimum Policy Premium
                             (Any acquisitions during the policy period will be subject to additional underwriting
                             consideration and additional premium)

                             $25,000 Minimum Policy Premium - Greater of $25,000 or 25% of the premium above.
                             (This applies even in the event of amendment of policy term)

6.      Retroactive Date:     08/21/2012

                             THIS INSURANCE DOES NOT APPLY TO OCCURRENCES WHICH OCCUR BEFORE THE
                             RETROACTIVE DATE.

7.      Endorsements Attached At Issuance:          SEE ATTACHED SCHEDULE

By Acceptance of this policy the Insured agrees that the statements in the Declarations and the Application and any
attachments hereto are the Insured's agreements and representations and that this policy embodies all agreements
existing between the Insured and the Company or any of its representatives relating to this insurance.

IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary.

Stanley A. Galanski, President                    Emily B. Miner, Secretary

Date of Issue:  09/14/2017



# SCHEDULE OF FORMS AND ENDORSEMENTS
# FOLLOWING FORM EXCESS LIABILITY COVERAGE

THE FOLLOWING ARE THE FORMS ATTACHED TO AND FORMING PART OF THE POLICY AT INCEPTION:

| Form Number | Edition | Title |
|---|---|---|
| NAV LSAX DEC | 07 17 | Declaration |
| NAV LSX 506 | 09 15 | Schedule of Forms and Endorsements |
| NAV LSX 500 | 05 16 | Commercial Excess Liability Coverage Form |
| NAV LSAX 1001 PA | 06 16 | Pennsylvania Amendatory Endorsement |
| NAV LSX 501 | 07 16 | Designated Products Exclusion Endorsement |
| NAV LSX 502 | 09 15 | Underlying Policy Receipt Endorsement |
| CG 2173 | 01 15 | Exclusion of Certified Acts of Terrorism |

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

May contain copyrighted material of the
Insurance Service Office, Inc with its permission.

**COMMERCIAL EXCESS LIABILITY**
**NAV LSX 500 05 16**

# FOLLOWING FORM EXCESS LIABILITY POLICY
### (DEFENSE INSIDE LIMITS)

THIS POLICY PROVIDES CLAIMS MADE COVERAGE ONLY. COVERAGE IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD OR ANY EXTENDED REPORTING PERIOD, IF APPLICABLE. THE PAYMENT OF DEFENSE EXPENSES REDUCES THE LIMITS OF INSURANCE. PLEASE READ THE ENTIRE POLICY CAREFULLY.

Various provisions of this policy restrict coverage. Read the entire policy carefully to determine your rights, duties and what is and is not covered.

Throughout the policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as an insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance. The word insured means any other person or organization qualifying as such under **SECTION III – WHO IS AN INSURED**.

Other words and phrases that appear in **bold** in this policy have special meanings. Refer to **SECTION VII - DEFINITIONS.**

**SECTION I – COVERAGE**

1. Insuring Agreement

A. Excess Liability

    1. Subject to the applicable limits of insurance, we will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages in excess of **underlying limits**, for **loss** to which this insurance applies. This insurance applies only if:

        a. the **loss** is caused by an **occurrence** that takes place in the **coverage territory**;

        b. the **loss** did not occur before the Retroactive Date, if any, shown in the Declarations, or after the end of the **policy period**;

        c. the **controlling underlying insurance** applies to the **loss**;

        d. all **underlying insurance** has been exhausted by payment of the limits of such insurance by the underlying insurer or payment of an amount equivalent to the limits of the **underlying insurance** by the underlying insurer and/or you;

        e. a claim for damages because of the **loss** is first made against the insured during the **policy period** or any applicable Extended Reporting Period we provide; and

        f. if the **controlling underlying insurance** so requires, the claim for damages because of **loss** is reported to us during the **policy period** or any applicable Extended Reporting Period we provide.

    2. The terms, conditions, definitions, exclusions and endorsements of the **controlling underlying insurance** are made a part of our policy, unless a more restrictive provision is contained in or endorsed to our policy.

Notwithstanding the foregoing, the following changes to the **controlling underlying insurance** made after our policy's inception shall not be binding on us unless we agree in writing:

        a.   any change which is subject to an additional premium charge;

**COMMERCIAL EXCESS LIABILITY**
**NAV LSX 500 05 16**

    b.  the inclusion of an additional coverage extension endorsement; or

    c.  any change to the terms, conditions, definitions, exclusions or endorsements that broadens the scope of the coverage already provided.

All claims for damages because of **loss** to the same person will be deemed to have been made at the time the first of those claims is made against any insured.

3.  With respect to any **occurrence** covered by the **controlling underlying insurance**, we shall not be called upon to assume charge of the investigations, settlement or defense of any suit brought against the insured, but we shall have the right and be given the opportunity to associate with the underlying insurer and the insured to investigate, defend against and participate in the settlement of any claim or suit against the insured seeking damages which, in our opinion, will create liability on the part of us under the terms of this policy.

4.  With respect to any **occurrence** for which **underlying insurance** is unavailable because of exhaustion of limits, but is otherwise covered by the terms and conditions of the **controlling underlying insurance** and this policy, this insurance will apply in place of the **controlling underlying insurance,** and we shall have the right and duty to investigate claims and defend suits against the insured seeking damages, and have the right to settle claims or suits at our discretion, until we have paid our applicable Limits of Insurance.

5. As respects paragraph 4 above, **defense expenses** we incur in the investigation of any claim or defense of any suit will reduce our Limits of Insurance.

6. The amount we pay is limited, as set forth in **SECTION IV – LIMITS OF INSURANCE**.

## SECTION II - EXCLUSIONS

The EXCLUSIONS sections of the **controlling underlying insurance** are made part of this policy. If an inconsistency or contradiction exists between an Exclusion of this policy and an Exclusion of the **controlling underlying insurance**, the Exclusion of this policy will apply. However, in no case will coverage be excluded by the **controlling underlying insurance** and not excluded by this policy.

This insurance does not apply to any liability:

1. to which **controlling underlying insurance** does not apply;

2. for which coverage is provided by **an underlying insurance** at sub-limits that are lower than the limits of insurance applicable to other coverages provided by the **underlying insurance** and lower than the **underlying limits**; but we shall recognize the reduction or exhaustion of the aggregate limits of insurance for the **underlying limits** that results from the payment of **loss** as a result of any claim or claims covered under an **underlying insurance** but excluded by operation of this clause;

3. for **loss** which commenced prior to the Retroactive Date, shown in the Declarations, whether or not such **loss** continues, progresses, changes, or resumes during this **policy period**;

4. for damage to property any insured owns, rents or occupies, including any costs or expenses incurred by any insured or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including the prevention of injury to a person or damage to another's property;

5. for damage to personal property in the care, custody or control of any insured;

6. arising out of any **aircraft products**;

**COMMERCIAL EXCESS LIABILITY**
**NAV LSX 500 05 16**

7. arising out of the actual, alleged, suspected or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of **asbestos**;

8. arising out of the actual, alleged, suspected or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of **fungi** or bacteria;

9. arising out of the actual, alleged, suspected or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of **silica** or **silica related dust**;

10. arising out of **medical services**; however, this exclusion does not apply to:

    a. physicians, dentists, nurses, emergency medical technicians or paramedics employed by you to the extent that they are rendering first aid; or

    b. to a clinical trial investigator for actions governed by the protocol of a clinical trial;

11. arising out of any **employment practices** of any insured;

12. arising out of:

    a. war, including undeclared or civil war;

    b. war like action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    c. insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these;

13. imposed under:

    a. an uninsured or underinsured motorist, uninsured or underinsured boater, Medical Payments, Personal Injury Protection, No-Fault or any similar law;

    b. a workers compensation, disability benefits, unemployment compensation or any similar law;

    c. the Employee Retirement Income Security Act of 1974, any amendments thereto or any similar law;

14. arising out of any actual or alleged use or misuse of confidential or proprietary information;

15. arising out of any actual or alleged failure to prevent unauthorized access to, or unauthorized use of, your client's, or your client's customers':
    a. confidential or proprietary information; or

    b. information systems;

    and this exclusion applies, but is not limited, to any allegations of **loss** filed by third-parties based on or arising out any actual or alleged failure in a. or b. above.

**SECTION III – WHO IS AN INSURED**

The WHO IS AN INSURED section of the **controlling underlying insurance** is made part of this policy. Any person or organization that is an insured under the **controlling underlying insurance** is an insured under this policy to the same extent.

**COMMERCIAL EXCESS LIABILITY**
**NAV LSX 500 05 16**

## SECTION IV – LIMITS OF INSURANCE

The Limits of Insurance shown in the Declarations and the rules below are the maximum amount payable by us under this policy for all damages and **defense expenses** regardless of the number of insureds, claims made or suits brought, or persons or organizations making claims or bringing suits.

1. The Following Form Excess Aggregate Limit is the most we will pay for the sum of all damages and **defense expenses** for claims within the **policy period**;

2. Subject to paragraph 1. above, the Each Occurrence Limit is the most we will pay for all damages and **defense expenses** that arise out of any one **occurrence**.

## SECTION V – CONDITIONS

The CONDITIONS sections of the **controlling underlying insurance** are made part of this policy. If an inconsistency or contradiction exists between the Conditions of this policy and the Conditions of the **controlling underlying insurance**, the Conditions of this policy will apply.  Other than as to Limits of Insurance, in no event shall this policy grant broader coverage than would be provided by the **controlling underlying insurance**.

1. Appeals

At our discretion we may appeal any judgment that would result in a payment under this policy. When we do appeal, the costs associated with the appeal will reduce our Limits of Insurance.   If, however, the cost of prosecuting the appeal may exceed the limits of insurance, we will only pursue that appeal with your consent.

2. Bankruptcy or Insolvency

Bankruptcy or insolvency of the insured or the insured's estate will not relieve us of our obligations under this policy. The insured, however, will bear the risk that any **underlying insurance** is or may be uncollectible.   Financial impairment or insolvency of any company providing **underlying insurance** will not reduce the **underlying limits** or increase our obligations under this policy. We will not be required to drop down or replace **underlying insurance** in the event of financial impairment or insolvency.  Coverage under this policy will not be available unless and until the aggregate amount of the limits of all **underlying insurance** has been exhausted by the actual payment of **loss**.

3. Cancellation

a. The first Named Insured may cancel this policy at any time by providing us advanced written notice of the cancellation date.

b. We may cancel this policy at any time by providing the first Named Insured written notice of cancellation:

i. at least 10 days in advance if we cancel for non-payment of premium; or

ii. at least 90 days in advance if we cancel for any other reason.

c. If the **controlling underlying insurance** is cancelled for any reason, this policy is also cancelled. Reinstatement of the **controlling underlying insurance** does not reinstate this policy unless reinstatement is endorsed hereon. Return premium, if any, will be calculated per Condition 11. Premium. Proof of mailing will serve as proof of notice.

**COMMERCIAL EXCESS LIABILITY**
**NAV LSX 500 05 16**

4. Non-Renewal

    a.  We are not obligated to renew this policy; however, should we decide to not renew, we will provide the first Named Insured written notice of our decision at least 90 days prior to the expiration date shown in the Declarations.

    b.  We will not restrict the terms or increase premium of this policy at renewal unless we have given the first Named Insured at least 30 days advanced notice of any such changes; however, no notice will be provided or required if a restriction in this policy results from a restriction applicable to **controlling underlying insurance**.

    c.  The first Named Insured may elect to not renew this policy by:

        i. providing advance written notice to us;

        ii. rejecting our offer to renew; or

        iii. failing to reply to our offer to renew.

        With respect to options i. and ii. above, proof of mailing will serve as proof of notice.

5. Changes

This policy contains the entire agreement between you and us. No change in, modification of, or assignment of interest under this policy shall be effective except when made by written endorsement to this policy which is signed by an authorized representative of us.

6. Duties When There is an **Occurrence**, Claim or Suit

    a.  You must see to it that we are notified as soon as practicable of any **occurrence** which may result in a claim under this policy. You shall also provide other claim information or reports as reasonably requested by us from time to time.  To the extent possible, notice should include:

        i. how, when and where the **occurrence** took place;

        ii. the names and addresses of any injured persons and witnesses; and

        iii. the nature and location of any injury or damage arising out of the **occurrence**.

    b.  If a claim is made or suit is brought against any insured which may be reasonably expected to result in a claim under this policy, you must:

        i. immediately record the specifics of the claim or suit and the date received; and

        ii. notify us, and any other insurers who could be obligated to provide coverage, as soon as practicable.

    c.  You and any other involved insured must:

        i. immediately send us, and any other insurers who could provide coverage, copies of any demands, notices, summonses or legal papers received in connection with a claim or suit which may be reasonably expected to result in a claim under this policy;

**COMMERCIAL EXCESS LIABILITY**
**NAV LSX 500 05 16**

    ii.  authorize us to obtain records and other information;

    iii. cooperate with us in the investigation or settlement of the claim, issues relating to coverage under this policy, or defense against the suit; and

    iv. assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of the injury or damage to which this insurance may apply.

  d.   Notice to us must be sent to our address shown in the Declarations.

  e.   No insured will, except at that insured's own cost:

    i.  voluntarily make a payment;

    ii.  assume any obligation; or

    iii.  incur any expense, other than first aid

    that might reasonably involve this policy, without our consent.

7.  Legal Action Against Us

    No person or organization has a right under this insurance:

  a.   to join us as a party or otherwise bring us into a suit asking for damages from an insured; or

  b.   to sue us on this insurance unless all of its terms have been fully complied with.

8. Maintenance of **Controlling Underlying Insurance**

During the **policy period** you must maintain **controlling underlying insurance** with **underlying limits** at least equal to the amounts shown in the Declarations. The **underlying limits** must be unimpaired at the beginning of this **policy period**. In the event of non-concurrent policy periods between this policy and the **underlying insurance**, only covered events taking place during the **policy period** of this policy shall be considered in determining the extent of any erosion or exhaustion of the underlying aggregate limits.

If you fail to maintain the **controlling underlying insurance** this policy will be invalid. If you fail to maintain **underlying limits**, we will only be liable to the extent we would have been liable had you maintained the **underlying limits**. Reduction of **underlying limits** by the payment of judgments or settlements for **loss** to which this insurance applies after the inception of this policy will not be considered a failure to maintain **underlying limits**.

9. Other Insurance

In addition to **underlying insurance**, this insurance is excess over any valid and collectible insurance available to the insured, except insurance purchased specifically to apply in excess of this policy.

10. Payment of Damages

When the amount of damages payable under this policy has been determined by final judgment or a written settlement agreement between the claimant and us, we will pay that amount, up to our applicable Limits of Insurance, after the **controlling underlying insurance** or the insured has paid the full amount of the **underlying limits**.

**COMMERCIAL EXCESS LIABILITY**
**NAV LSX 500 05 16**

11. Premium

The Premium shown in the Declarations is the premium for the coverage we provide for the **policy period**. The first Named Insured is responsible for the payment of all premiums under this policy.

If the Company cancels this Policy prior to its expiration date, a refund due shall be computed on a pro-rata basis and shall be promptly returned to the first Named Insured.

If the first Named Insured cancels this Policy prior to its expiration date, the refund due shall be 90% of the pro-rata unearned paid premium, or 75% of the total annual premium, whichever is less but subject to the minimum premiums shown in the Declarations.  The first Named Insured may elect in writing to the Company to have any return premium due applied to the additional premium charged for any Extended Reporting Period endorsement.

Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

12. Separation of Insureds

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

    a.   as if each Named Insured were the only Named Insured; and

    b.   separately to each insured against whom claim is made or suit is brought.

13. Transfer of Rights of Recovery Against Others

If an insured has any rights to recover all or part of any payment we have made under this insurance, the insured must preserve those rights and, at our request and expense, pursue those rights for our benefit or transfer those rights to us. The insured must do nothing after an **occurrence** to impair those rights; however, if you waive any right of recovery against a specific person or organization for a **loss**, as required under a written contract entered into prior to the **occurrence**, we agree to also waive our right of recovery pursuant to the terms of that written contract.

14. When We Defend

If the law of the governing jurisdiction permits an insured to select their own counsel to be paid for by us, we shall only be liable for the reasonable and necessary defense costs of one law firm per insured at rates customarily paid for the defense of similar claims in the jurisdiction where the claim is pending.

15. Claims outside the United States of America, its Territories and Possessions, or Canada

When we have the duty to defend an insured and are prevented by law or otherwise from doing so, we will reimburse the insured for any reasonable and necessary expenses incurred in the defense of a suit to which this insurance applies. If the insured becomes legally obligated to pay damages to which this insurance applies and we are prevented by law from paying such damages on behalf of the insured, we will reimburse the insured, in U.S currency at the prevailing exchange rate at the time the damages were paid, for such damages.

16. U.S. Economic and Trade Sanctions Limitations Clause

No insurer shall be deemed to provide cover and no insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that insurer to any sanction, prohibition or restriction under the trade or economic sanctions, laws or regulations of the United States of America.

**COMMERCIAL EXCESS LIABILITY**
**NAV LSX 500 05 16**

The United States of America trade or economic sanctions, laws or regulations shall include, but not be limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control (OFAC).

17. Service of Suit

In the event we fail to pay an amount claimed to be due hereunder, we, at the request of the first Named Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction. Nothing herein constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to United States District Court, or to seek a transfer of an action to another court as permitted by law.

Service of process in such suit shall be made upon:

> Name:  Navigators Management Company
> Attn:  General Counsel
> Address:   400 Atlantic St., 8th floor, Stamford, CT 06901

and in any suit instituted against such person upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

The General Counsel is authorized and directed to accept service of process on behalf of the company in any such suit and, upon the request of the first Named Insured, to give a written undertaking to the first Named Insured that he or she will enter a general appearance upon the company's behalf in the event such suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States that makes provision therefor, the company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of any Named Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or true copy thereof.

18.  Headings

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**SECTION VI - EXTENDED REPORTING PERIODS**

1.   When an Extended Reporting Period applies to the **controlling underlying insurance** without a premium charge, an Extended Reporting Period will also apply to this policy for the period provided by the **controlling underlying insurance**.

2.   When an Extended Reporting Period applies to the **controlling underlying insurance** for an additional premium charge, an Extended Reporting Period may, for an additional premium, also apply to this policy, provided that you request that we provide an Extended Reporting Period and promptly pay any premium due, subject to the following:

   a.   Premium for an Extended Reporting Period will not exceed 200% of the policy premium; and

   b.   Once the premium has been paid, the Extended Reporting Period cannot be cancelled and the premium cannot be refunded.

**COMMERCIAL EXCESS LIABILITY**
**NAV LSX 500 05 16**

3.  When 1. or 2. above apply, the Extended Reporting Period will terminate on the termination date of the Extended Reporting Period of the **controlling underlying insurance**, but in no event will our Extended Reporting Period exceed 84 months.

An Extended Reporting Period provides additional time, after the end of the **policy period**, during which you may continue to report claims to us. An Extended Reporting Period does not change the **policy period**, increase limits of insurance or reinstate any aggregate limit.

## SECTION VII – DEFINITIONS

The DEFINITIONS sections of the **controlling underlying insurance** are made part of this policy, and apply to words or phrases used in this policy provided always that words or phrases in bold font in this policy will have the meaning given them in this policy.

**Aircraft products** means a product or component thereof made, sold, licensed, handled or distributed by an insured, which is:

a.  an aircraft;

b.  ground control or support equipment; or

c.  any article, component or device used to achieve, control or maintain flight or landing of an aircraft.

**Asbestos** means the mineral in any form, including but not limited to its incorporation in, or being made a component of, any other substance, product or material.

**Controlling underlying insurance** means the policy listed in the Schedule of Underlying Insurance shown in the Declarations, or its renewal or replacement, which applies to the **loss**, or would have applied but for:

a.  an exclusion in that policy; or

b.  the exhaustion or erosion of an aggregate limit of insurance;

If more than one policy is listed in the Schedule of Underlying Insurance, the **controlling underlying insurance** is the policy which applies to the **loss** or would have applied but for the reasons a. or b. listed above.

**Coverage territory** means the coverage territory as defined in the **controlling underlying insurance**.

**Defense expenses** means expenses we incur to investigate a claim or defend a suit. **Defense expenses** include interest which accrues on our portion of a judgment, after entry of that judgment and after the insured or any underlying insurer has paid the full amount of their portion of the judgment but before we have paid, offered to pay or deposited in the court the part of the judgment that is within our applicable Limits of Insurance.   **Defense expenses** are part of, and not in addition to, the Limits of Insurance, and the payment of **defense expenses** reduces the Limits of Insurance.

**Employment practices** means:

a.  dismissal, discharge or termination of employment, whether actual, constructive or retaliatory;

b.  failure or refusal to hire or promote;

c.  discipline, demotion, coercion or retaliatory treatment;

**COMMERCIAL EXCESS LIABILITY**
**NAV LSX 500 05 16**

    d.   failure to grant tenure;

    e.   negligent employment evaluation;

    f.   sexual or other workplace harassment, including quid pro quo and hostile work environment;

    g.   employment discrimination;

    h.   invasion of privacy, violation of employment related civil rights, employment related libel, slander or defamation;

    i.   creating or enforcing or failing to create or enforce employment related policies or procedures; or

    j.   actual or alleged violations of the Family and Medical Leave Act of 1993 or its amendments.

**Fungi** means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by **fungi**. But **fungi** does not include any **fungi** that are, are on, or are contained in a good or product intended for human consumption.

**Loss** means the total sum which the insured shall become obligated to pay as the result of an **occurrence**.

**Medical services** means:

    a.   dental, medical, mental health, nursing, surgical, imaging, clinical testing or other similar service providing direct care to a patient and performed by a medical intern, resident, technician, nurse, physician or other health care professional;

    b.   the furnishing of food, beverages, medications or appliances in connection with such services; or

    c.   the post-mortem handling of human bodies.

**Occurrence** means an accident, offense or other incident to which the **controlling underlying insurance** applies.

**Policy period** means the period of time between the effective date shown in the Declarations and the earlier of the expiration date shown in the Declarations or the expiration date shown in an endorsement to this policy.

**Silica** means silicon dioxide in its natural state, occurring in crystalline, amorphous or impure forms, **silica** particles, **silica** dust or **silica** compounds. It does not include processed colloidal silicon dioxide.

**Silica related dust** means a mixture or combination of **silica** and other dust particles.

**Underlying insurance** means the liability insurance provided under the policy or policies shown in the Schedule of Underlying Insurance.

**Underlying limits** means the amounts shown in the Declarations as the minimum limits of insurance to be provided by **controlling underlying insurance** and any other **underlying insurance**.  If any underlying insurance policy has a limit of liability greater than the amount shown in the Schedule of Underlying Insurance, then this policy will apply in excess of the greater amount; and if any underlying insurance policy has a lower limit of liability than the amount shown in the Schedule of Underlying Insurance, then this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance.

# PENNSYLVANIA AMENDATORY ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**FOLLOWING FORM EXCESS LIABILITY POLICY**

**SECTION V - CONDITIONS**, 3. Cancellation, is deleted in its entirety and replaced with the following:

3.  Cancellation/Non-Renewal

   a.  The first Named Insured may cancel this policy by returning the policy to us or by giving us written notice and stating at what future date coverage is to stop.

   b.  We may cancel or not renew this policy by written notice to the first Named Insured at the address shown on the Declarations. Our notice will include the specific reason for cancellation or non-renewal. Proof of delivery or mailing is sufficient proof of notice.

   c.  During the first 60 days this policy is in effect, we may cancel for any reason.  We will give the first Named Insured at least 30 days notice before cancellation is effective.

   d.  If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

      (1)  A condition, factor, or loss experience material to insurability has changed substantially, or a substantial condition, factor, or loss experience material to insurability has become known during the policy term;

      (2)  Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease shall, at the time of cancellation, be certified to the Insurance Commissioner as directly affecting in-force policies;

      (3)  The Named Insured has made a material misrepresentation which affects the insurability of the risk;

      (4)  The Named Insured has failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit;

      (5)  Material failure to comply with policy terms, conditions, or contractual duties; or

      (6)  Other reasons that the Insurance Commissioner may approve.

   e.  After this policy has been in effect 60 days or more, we will give the first Named Insured notice of cancellation or non-renewal as follows:

      (1)  For failure to pay a premium when due or where the Named Insured has made material misrepresentation which affects the insurability of the risk, we will give the first Named Insured at least 15 days notice before cancellation is effective; or

      (2)  For any other reason, we will give the first Named Insured at least 60 days notice before cancellation or non-renewal is effective.

f.   The policy may also be cancelled from inception upon discovery that it was obtained through fraudulent statements, omissions, or concealment of fact material to the acceptance of the risk or to the hazard assumed by us.

g.   If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

h.   If we increase your renewal premium, we will mail or deliver to the first Named Insured:

   (1)   Written notice of our intent to increase the premium at least 60 days before the effective date of the premium increase; and

   (2)   An estimate of the increase at least 30 days before the effective date of premium increase.

i.   Any notice of renewal premium increase will be mailed or delivered to the first Named Insured at the last known address.  If notice is mailed, it will be by registered for first class mail.  Proof of mailing will be sufficient proof of notice.

j.   The first Named Insured may request loss information from us within 10 days of receipt of the cancellation or non-renewal notice.  We shall have 30 days from the date of receipt of the written request to provide the requested information.  Loss information on an insured shall consist of the following:

   (1)   Information on closed claims, including date and description or **occurrence**, and any amount of payments, if any;

   (2)   Information on open claims, including date and description of **occurrence**, amount of payment, if any, and amount of reserves, if any;

   (3)   Information on notices of occurrence, including date and description of **occurrence** and amount of reserves, if any.

All other terms and conditions of this policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY.
## PLEASE READ IT CAREFULLY.

## DESIGNATED PRODUCTS EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:
FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY

The following is added to **SECTION II - EXCLUSIONS**

16.  arising out of:
   (a)  any of the following products, or products made of or containing the following, for manufacturers or sponsors of clinical trials:

- Any product containing mercury, where such product is intended to be implanted, ingested, injected, inhaled or absorbed
- Birth control or fertility goods or products whose primary function is to control or affect fertility, fertilization, conception or contraception.
- Di-(2-Ethylhexyl) Phthalate (DEHP) used in goods or products approved for neonatal patients
- Diethylstilbestrol (DES)
- Ephedra
- Ephedrine, or pseudoephedrine, except where used in Over the Counter or prescription products
- Fentanyl or Fentanyl patches, except for generics manufactured after addition of the warnings for opioid addiction and Serotonin Syndrome to the labeling
- Isotretinoin
- Latex gloves when sensitivity warning is not on package or other labeling
- Live Virus Vaccines, except for attenuated vaccines
- Metoclopramide (including but not limited to Reglan) in regards to side effects of Tardive Dyskinesia, worsening of Parkinson's, and other movement disorders resulting from usage of the drug,
- Oral Hormone replacement products approved for menopause treatment
- Pain Pumps when inserted directly into an orthopedic joint and administering pharmaceuticals not approved for joint application
- Permanent Breast implants, except when part of mastectomy reconstruction products
- Phentermine used in combination with fenfluramine (including but not limited to Pondimin) or dexfenfluramine (Redux)
- Propoxyphene (including but not limited to Darvon or Darvocet)
- Selective Serotonin Reuptake Inhibitors (SSRI), except for generic manufactured after addition of the warnings to labeling for increased suicide risk and increased birth defect risk if used by pregnant women
- Vaccines with preservatives approved for persons under age of 18

   (b) Blood Banks and Blood Donation Facilities, except biobanks storing samples for research and development

The exclusions above shall not apply to contract manufacturers who are indemnified and held harmless contractually, or do not have responsibility for label or warning design, regulatory reporting, safety surveillance, formulation or development.

### ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

May contain copyrighted material of the
Insurance Service Office, Inc with its permission.

# THIS ENDORSEMENT CHANGES THE POLICY.
# PLEASE READ IT CAREFULLY.

## UNDERLYING POLICY RECEIPT ENDORSEMENT

This endorsement modifies insurance provided under the following:
FOLLOWING FORM EXCESS LIABILITY POLICY

It is hereby understood and agreed that **SECTION V – CONDITIONS** is amended to add the following:

19.  If this policy was issued prior to the receipt of all underlying policies, the following condition applies.

   a.  The terms, definitions, conditions, exclusions or limitations stated in the binders for the underlying policies have been relied upon in the underwriting of this policy.   Any underlying policy  that is issued with any terms, definitions, conditions, exclusions or limitations that are changed in any manner from its binder, or differ in any respect from its binder, are not accepted as part of this policy.  Any changes or differences between an underlying policy binder and the issued underlying policy are required to be accepted via a written endorsement to this policy in order to be effective. That notwithstanding, if we have not provided written objection to any such changes or differences  within 30 days of receipt of the underlying policy, then we accept the policy as issued and delivered to us.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

May contain copyrighted material of the
Insurance Service Office, Inc with its permission.

**COMMERCIAL GENERAL LIABILITY**
**CG 21 73 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.



AlaFile E-Notice

02-CV-2021-900918.00

To:   FREDERICK GEORGE HELMSING JR
      fhelmsing@mcdowellknight.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

KVK TECH, INC. V. NAVIGATORS SPECIALTY INSURANCE COMPANY
02-CV-2021-900918.00

The following complaint was FILED on 5/26/2021 4:56:38 PM

Notice Date:      5/26/2021 4:56:38 PM

JOJO SCHWARZAUER
CIRCUIT COURT CLERK
MOBILE COUNTY, ALABAMA
CIRCUIT CIVIL DIVISION
205 GOVERNMENT STREET
MOBILE, AL, 36644

251-574-8420
charles.lewis@alacourt.gov



AlaFile E-Notice

02-CV-2021-900918.00

To:  NAVIGATORS SPECIALTY INSURANCE COMPANY
     C/O CT CORPORATION SYSTEM
     2 NORTH JACKSON, STE 605
     MONTGOMERY, AL, 36104

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

KVK TECH, INC. V. NAVIGATORS SPECIALTY INSURANCE COMPANY
02-CV-2021-900918.00

The following complaint was FILED on 5/26/2021 4:56:38 PM

Notice Date:      5/26/2021 4:56:38 PM

JOJO SCHWARZAUER
CIRCUIT COURT CLERK
MOBILE COUNTY, ALABAMA
CIRCUIT CIVIL DIVISION
205 GOVERNMENT STREET
MOBILE, AL, 36644

251-574-8420
charles.lewis@alacourt.gov

| State of Alabama<br>Unified Judicial System<br>Form C-34   Rev. 4/2017 | SUMMONS<br>- CIVIL - | Court Case Number<br>02-CV-2021-900918.00 |
|---|---|---|

### IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA
### KVK TECH, INC. V. NAVIGATORS SPECIALTY INSURANCE COMPANY

**NOTICE TO:** NAVIGATORS SPECIALTY INSURANCE COMPANY, C/O CT CORPORATION SYSTEM 2 NORTH JACKSON, STE 605, MONTGOMERY, AL 36104

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), FREDERICK GEORGE HELMSING JR

*(Name(s) of Attorney(s))*

WHOSE ADDRESS(ES) IS/ARE: 11 N. Water Street, Suite 13290, MOBILE, AL 36602

*(Address(es) of Plaintiff(s) or Attorney(s))*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of KVK TECH, INC.

*[Name(s)]*

pursuant to the Alabama Rules of the Civil Procedure.

| 05/26/2021 | /s/ JOJO SCHWARZAUER | By: |
|---|---|---|
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.       /s/ FREDERICK GEORGE HELMSING JR

*(Plaintiff's/Attorney's Signature)*

## RETURN ON SERVICE

☐ Return receipt of certified mail received in this office on _____

*(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____ in _____ County,

*(Name of Person Served)*       *(Name of County)*

Alabama on _____ .

*(Date)*

_____       _____       _____

*(Type of Process Server)*       *(Server's Signature)*       *(Address of Server)*

_____       _____

*(Server's Printed Name)*       *(Phone Number of Server)*

ELECTRONICALLY FILED
6/4/2021 8:48 AM
02-CV-2021-900918.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

Revised 4-1-99; 11-1-99; 11-3-05

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

|                          |   |                        |
|--------------------------|---|------------------------|
| _____  | * |                        |
|                          | * |                        |
| _____  | * |                        |
|       Plaintiff,         | * |                        |
|                          | * | CIVIL ACTION NO. _____ |
| vs.                      | * |                        |
|                          | * |                        |
| _____  | * |                        |
|                          | * |                        |
| _____  | * |                        |
|       Defendant.         | * |                        |

## GENERAL PRE-TRIAL ORDER

To expedite pre-trial and trial procedure, it is ORDERED by the Court that the following will apply:

### 1.   EXHIBITS, DOCUMENTS, AND PHYSICAL EVIDENCE GENERALLY

a.     Each party shall identify in writing to all other parties and shall make all documents, exhibits and physical evidence, or copies thereof, expected to be used in the case in chief available to the other parties, not less than 21 days prior to trial, for inspection and copying.  The same shall then be authenticated and admitted into evidence without further proof, unless written objections to any such documents or exhibits be made to the Court not less than 14 days prior to trial specifying the grounds of objection to the genuineness and relevancy of the proposed document, exhibit, or physical evidence.  The requirement does not apply to documents, exhibits and physical evidence used solely as impeachment evidence.

b.     Documents, exhibits or physical evidence not timely exhibited to or made available to other parties prior to trial under this Order will not be admitted into evidence at the trial unless solely for impeachment purposes or unless the ends of justice so require.

c.     Documents, exhibits or physical evidence so admitted hereunder shall be presented to the court reporter for marking in evidence prior to trial.

### 2.   DOCTOR, HOSPITAL AND MEDICAL EXPENSES

a.     If applicable, all doctor, medical and hospital bills shall be sent to or made available to all parties not less than 21 days before trial and shall be admitted in evidence as reasonable without further proof, unless written objection to any such bills be made to the Court no less than 14 days before trial specifying the grounds for objection.

b.     Any such bills not timely exhibited to the other parties will not be admitted in evidence at trial unless the ends of justice so require.

c.     The bills so admitted shall be presented to the court reporter for marking in evidence prior to trial.

## 3.   SPECIAL DAMAGES

a.   All parties seeking special damages shall furnish the other parties with a list thereof not less than 21 days before trial.  Written objections thereto may be made not less than 14 days before trial specifying grounds of objections.

b.   Evidence of special damages claimed, but not timely exhibited to other parties, will not be admitted into evidence unless the ends of justice require so.

## 4.   AGENCY-TIME AND PLACE-DUTY

a.   Agency and the time and place of the incident involved, if alleged in the complaint, and, if a negligence case, the existence of a duty, are admitted and the parties are deemed correctly named and designated unless specifically denied by answer or unless written objection is made not less than 14 days before trial.  The objections shall include the correct name and entity and/or the grounds relied on.

## 5.   EXPERTS

a.   Unless previously obtained by discovery, each party will furnish to all other parties the names, addresses and qualifications of all expert witnesses expected to testify, together with a brief summary of their opinions.  Such disclosure of experts shall be made by the party filing the Motion to Set and Certificate of Readiness not later than the time of filing such motion.  Disclosure by all parties shall be made not later than 14 days after the filing of the Motion to Set and Certificate of Readiness.

b.   Disclosure of experts in cases not included in the Fasttrack system shall be made by all parties not less than 60 days before trial.

c.   Unless written objection to the qualifications of an expert is made not later than 30 days before trial, stating grounds, the qualification of such expert will be admitted.

d.   Upon calling an expert to testify at trial, the attorney may state to the Court and jury the name, address and summary of the qualifications of the expert.

## 6.   DISCOVERY

Discovery shall be completed 30 days prior to the trial date.  On written motion for good cause shown, the court may allow discovery within this 30-day period.

## 7.   JURY INSTRUCTIONS

If the case is to be tried by a jury, requested written charges shall be submitted to the Court not later than the close of the plaintiff's case, subject to supplementation during the course of the trial on matters which could not be reasonably anticipated.  Each requested charge will be typed on letter size paper and identified by the party's last name and shall be numbered.

## 8.   JURY SELECTION

Before the commencement of trial, the parties will furnish or advise the court, outside the presence of the jury, the names of all insurance companies involved and any special voir dire questions for the purpose of qualifying the jury.

9.   **DUTY TO SUPPLEMENT DISCOVERY**

All parties are under duty to supplement responses to discovery as provided by Rule 26(e)(3) ARCP which should be done not less than 30 days before trial.

10.   **MOTIONS GENERALLY**

If motion to strike or motion to dismiss a pleading is filed, the Court will not consider such unless a copy of the pleading sought to be struck or dismissed is attached thereto.

11.   **CONFLICTS**

In the event of scheduling conflict affected counsel shall comply with the Attorney Calendar Conflict Resolution Order of the Alabama Supreme Court.

It is further ORDERED by the Court that the Court will reconsider any portion of the General Pre-Trial Order upon timely application by any party.

Done this the _____ day of _____

_____
Presiding Judge, Michael A. Youngpeter



AlaFile E-Notice

02-CV-2021-900918.00

Judge: BEN H. BROOKS

To: HELMSING FREDERICK GEORGE
fhelmsing@mcdowellknight.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

KVK TECH, INC. V. NAVIGATORS SPECIALTY INSURANCE COMPANY
02-CV-2021-900918.00

The following matter was FILED on 6/4/2021 8:48:44 AM

Notice Date:       6/4/2021 8:48:44 AM

JOJO SCHWARZAUER
CIRCUIT COURT CLERK
MOBILE COUNTY, ALABAMA
CIRCUIT CIVIL DIVISION
205 GOVERNMENT STREET
MOBILE, AL, 36644

251-574-8420
charles.lewis@alacourt.gov



AlaFile E-Notice

02-CV-2021-900918.00

Judge: BEN H. BROOKS

To:   NAVIGATORS SPECIALTY INSURANCE COMPANY (PRO SE)
      C/O CT CORPORATION SYSTEM
      2 NORTH JACKSON, STE 605
      MONTGOMERY, AL, 36104-0000

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

KVK TECH, INC. V. NAVIGATORS SPECIALTY INSURANCE COMPANY
02-CV-2021-900918.00

The following matter was FILED on 6/4/2021 8:48:44 AM

Notice Date:       6/4/2021 8:48:44 AM

JOJO SCHWARZAUER
CIRCUIT COURT CLERK
MOBILE COUNTY, ALABAMA
CIRCUIT CIVIL DIVISION
205 GOVERNMENT STREET
MOBILE, AL, 36644

251-574-8420
charles.lewis@alacourt.gov

ELECTRONICALLY FILED
6/7/2021 2:39 PM
02-CV-2021-900918.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

| State of Alabama<br>Unified Judicial System<br>Form C-34   Rev. 4/2017 | **SUMMONS**<br>**- CIVIL -** | Co...<br>02-CV-2021-900918.00 |
|---|---|---|

### IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

### KVK TECH, INC. V. NAVIGATORS SPECIALTY INSURANCE COMPANY

**NOTICE TO:**   NAVIGATORS SPECIALTY INSURANCE COMPANY, C/O CT CORPORATION SYSTEM 2 NORTH JACKSON, STE 605, MONTGOMERY, AL 36104

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), FREDERICK GEORGE HELMSING JR

*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE: 11 N. Water Street, Suite 13290, MOBILE, AL 36602

*[Address(es) of Plaintiff(s) or Attorney(s)]*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of KVK TECH, INC.

*[Name(s)]*

pursuant to the Alabama Rules of the Civil Procedure.

| 05/26/2021 | /s/ JOJO SCHWARZAUER | By: |
|---|---|---|
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.     /s/ FREDERICK GEORGE HELMSING JR

*(Plaintiff's/Attorney's Signature)*

### RETURN ON SERVICE

☑ Return receipt of certified mail received in this office on   6-1-21   .

*(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____ in _____ County,

*(Name of Person Served)*          *(Name of County)*

Alabama on _____ .

*(Date)*



_____          _____
*(Type of Process Server)*     *(Server's Signature)*          *(Address of Server)*

Chantell C Tibler

*(Server's Printed Name)*          *(Phone Number of Server)*

### 02-CV-2021-900918.00

KVK TECH, INC. V. NAVIGATORS SPECIALTY INSURANCE COMPANY

| C001 - KVK TECH, INC. | v. | D001 - NAVIGATORS SPECIALTY INSURANCE COMPANY |
|---|---|---|
| *(Plaintiff)* | | *(Defendant)* |

**SERVICE RETURN COPY**

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Jennifer Lockwood_    ☐ Agent
                          ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

JUN 0 1 2021

D. Is delivery address different from item 1?    ☐ Yes
   If YES, enter delivery address below:          ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

9590 9402 6306 0274 0692 78

2. Article Number (Transfer from service label)

7018 0680 0001 0665 1562

PS Form 3811, July 2020 PSN 7530-02-000-9053    Domestic Return Receipt



USPS TRACKING #

MONTGOMERY AL 360

JUN 2021 PM 4 L

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 6306 0274 0692 78

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

Frederick G. Helmsing, Jr.
McDowell Knight Roedder & Sledge, LLC
11 North Water Street, Suite 13290
Mobile, AL 36602

KVK v. Navig. - CLT (Summons & Comp.)



AlaFile E-Notice

02-CV-2021-900918.00

To:   FREDERICK GEORGE HELMSING JR
      fhelmsing@mcdowellknight.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

KVK TECH, INC. V. NAVIGATORS SPECIALTY INSURANCE COMPANY
02-CV-2021-900918.00

The following RETURN ON SERVICE - SERVED was FILED on 6/7/2021 2:40:05 PM

Notice Date:      6/7/2021 2:40:05 PM

JOJO SCHWARZAUER
CIRCUIT COURT CLERK
MOBILE COUNTY, ALABAMA
CIRCUIT CIVIL DIVISION
205 GOVERNMENT STREET
MOBILE, AL, 36644

251-574-8420
charles.lewis@alacourt.gov



AlaFile E-Notice

02-CV-2021-900918.00

To:  NAVIGATORS SPECIALTY INSURANCE COMPANY (PRO SE)
C/O CT CORPORATION SYSTEM
2 NORTH JACKSON, STE 605
MONTGOMERY, AL, 36104-0000

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

KVK TECH, INC. V. NAVIGATORS SPECIALTY INSURANCE COMPANY
02-CV-2021-900918.00

The following RETURN ON SERVICE - SERVED was FILED on 6/7/2021 2:40:05 PM

Notice Date:     6/7/2021 2:40:05 PM

JOJO SCHWARZAUER
CIRCUIT COURT CLERK
MOBILE COUNTY, ALABAMA
CIRCUIT CIVIL DIVISION
205 GOVERNMENT STREET
MOBILE, AL, 36644

251-574-8420
charles.lewis@alacourt.gov



AlaFile E-Notice

02-CV-2021-900918.00

To:   FREDERICK GEORGE HELMSING JR
      fhelmsing@mcdowellknight.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

KVK TECH, INC. V. NAVIGATORS SPECIALTY INSURANCE COMPANY
02-CV-2021-900918.00

The following RETURN ON SERVICE - SERVED was FILED on 6/7/2021 2:40:05 PM

Notice Date:     6/7/2021 2:40:05 PM

JOJO SCHWARZAUER
CIRCUIT COURT CLERK
MOBILE COUNTY, ALABAMA
CIRCUIT CIVIL DIVISION
205 GOVERNMENT STREET
MOBILE, AL, 36644

251-574-8420
charles.lewis@alacourt.gov

**IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA**

| | | |
|---|---|---|
| **KVK-TECH, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 02-CV-2021-900918** |
| | ) | |
| **NAVIGATORS SPECIALTY** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## NOTICE OF REMOVAL

TO THE PLAINTIFF IN THE ABOVE-STYLED CAUSE AND ITS ATTORNEY OF RECORD:

Please take notice that on the 25th day of June, 2021, the undersigned, as attorneys for Defendant Navigators Specialty Insurance Company, filed on its behalf a Notice of Removal in the United States District Court for the Southern District of Alabama, to remove the above-entitled cause of action from the Circuit Court of Mobile County, Alabama (02-CV-2021-900918) to said United States District Court, and also filed a true copy of said Notice of Removal with the Clerk of the Circuit Court of Mobile County, Alabama.

Respectfully submitted,

 s/ Candace H. Newton
Joel S. Isenberg (ISE001)
Candace H. Newton (HUD026)
Lauren A. Wiggins (WIG023)
Attorneys for Defendant Navigators
Specialty Insurance Company

1

**OF COUNSEL:**
ELY & ISENBERG, LLC
3500 Blue Lake Drive, Suite 345
Birmingham, Alabama 35243
Telephone:      (205) 313-1200
Facsimile:       (205) 313-1201

## CERTIFICATE OF SERVICE

I do hereby certify that a true and accurate copy of the foregoing has been served on all parties of record via the Alafile electronic filing system on this the 25th day of June, 2021.

Frederick G. Helmsing, Jr.
Archibald T. Reeves, IV
McDowell Knight Roedder & Sledge LLC
P.O. Box 350
Mobile, Alabama 36601

 s/ Candace H. Newton
OF COUNSEL