IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KVK-TECH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:21-cv-286-KD-N |
| | ) | |
| NAVIGATORS SPECIALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This action is before the Court on the Motion for Judgment on the Pleadings and

Supporting Memorandum filed by Defendant/Counter-Plaintiff Navigators Specialty Insurance

Company (doc. 17)[1], the Response filed by Plaintiff/Counter-Defendant KVK-Tech, Inc. (doc.

24), Navigators' Reply (doc. 25), and the parties' supplemental briefs (doc. 27, doc. 31). Upon

consideration, and for the reasons set forth herein, the Motion is GRANTED.

A. Background

KVK manufactures and distributes generic pharmaceutical products including

prescription opioid medications.  On August 17, 2017, the first of many opioid lawsuits were

filed against KVK (doc. 1-1, at 6) (Hughes v. Mallinkrodt, et. al).[2]  One of these lawsuits was

filed on December 5, 2018 in the Circuit Court of Mobile County, The Estate of Bruce Brockel

---

[1] Both parties contend that venue is proper in the Southern District of Alabama (docs. 27, 31).

[2] The majority of the lawsuits have been consolidated for pre-trial litigation by the Judicial Panel
on Multidistrict Litigation. See In re National Opiate Litigation, MDL No. 2804, Case No. 1:17-
md-02804-DAP (N.D. Ohio).

v. John Patrick Couch, et al., and later removed to this Court. The case was then transferred to the Multi-District Litigation in the Northern District of Ohio.

KVK notified its primary insurer, Ironshore Specialty Insurance Company, on or about August 24, 2017 (doc. 9, p. 3, answer to counterclaim) of the Hughes lawsuit. KVK was served with the Hughes complaint on August 31, 2017 (doc. 1-1, p. 6). KVK had two primary claims-made products liability policies with Ironshore, each with a $15 million limit per occurrence and in the aggregate, in effect from July 22, 2016 through August 21, 2017 and from August 21, 2017 through August 21, 2018. Ironshore elected to treat all the opioid lawsuits as a single batch occurrence made while the July 22, 2016 to August 21, 2017 policy was in force. Ironshore provided KVK with a defense and coverage pursuant to that policy (doc. 1-1, p. 6; doc. 3).

Navigators provided a claims-made excess liability policy to KVK for the July 22, 2016 through August 21, 2017 period and for the August 21, 2017 through August 21, 2018 period (doc. 1-1). The policies had limits of $5 million per occurrence and in the aggregate. The policies are "Following Form Excess Liability Policies" and as such, incorporate the terms and conditions of the Ironshore policies, unless they are inconsistent with or contradict the Navigators policies.

On June 25, 2019, KVK notified certain other excess carriers that the opioid lawsuits were pending (doc. 3-2). By letter dated January 27, 2020, KVK gave Navigators notice of the opioid lawsuits and demanded coverage under four policies including the 2016-2017 and the 2017-2018 policies (doc. 3-3). On December 30, 2020, Navigators denied coverage to KVK (doc. 3, p. 15). In February 2021, KVK again wrote Navigators demanding coverage under the policy and Navigators again denied coverage (doc. 1-1, p. 7).

On May 26, 2021, KVK filed its complaint for declaratory judgment (Count One) and breach of contract (Count Two) against Navigators in the Circuit Court of Mobile County, Alabama (doc. 1-1, p. 2).[3]   Navigators was served on June 1, 2021 and timely filed its Notice of Removal on June 25, 2021.  This action was removed pursuant to 28 U.S.C. § § 1332, 1441, and 1446.

After removal, Navigators filed its answer, affirmative defenses, and counterclaim against KVK (doc. 3).  In the counterclaim, Navigators seeks a declaratory judgment pursuant to 28 U.S.C. § 2201, that "it has no duty to defend or indemnify" KVK (Id., p. 9).  Navigators alleges that KVK's failed to report the opioid lawsuits within 30 days after the Navigators policies expired (a time period incorporated from the Ironshore policy) (Id., p. 16 (Count One)).  In the alternative, Navigators alleges that KVK failed to timely report the underlying occurrence and opioid lawsuits in accordance with Condition 6 of the Navigators policies which require notice "as soon as practicable of any claim which may reasonably be expected to result in a claim under" the policies (Id., p. 17, Count Two).  KVK answered Navigators' counterclaim and asserted its affirmative defenses (doc. 9).

Navigators now seeks judgment on the pleadings in its favor as to all counts in the Complaint and Counterclaim to preclude it from providing excess insurance coverage to KVK for injuries allegedly caused by its prescription opioid products as alleged in the Hughes and Brockel lawsuits.[4]  Navigators argues that no coverage for the opioid lawsuits is owed to KVK because the claim reporting and notice provisions were not followed (doc. 17).

---

[3] KVK alleged that the $15 million policy with Ironshore Insurance Company, LLC was close to exhaustion and KVK sought coverage under the Navigator policies.

[4] Navigators and KVK agree that the Hughes and Brockel lawsuits arise out of the same Batch Occurrence and thus should be treated as a single claim.

B. <u>The relevant policy sections</u>

1. <u>The Navigators policies</u>

The Navigators policies provide KVK-Tech with excess liability insurance coverage for "loss" that exceeds the limits of the underlying Ironshore policy in effect for the same period and subject to the terms, conditions, and exclusions of the Ironshore policy, including any reporting requirements (doc. 1-1, p. 14-15; p. 71-72). The Navigators policies define "controlling underlying insurance" as the Ironshore policy in effect for the same period (doc. 1-1, p. 12, 22; p. 69, 79). With respect to excess liability, and relevant to this motion, the Navigators Insuring Agreement states that its insurance applies only if:

> e. a claim for damages because of the loss is first made against the insured during the policy period or any applicable Extended Reporting Period we provide; and

> f. if the controlling underlying insurance so requires, the claim for damages because of loss is reported to us during the policy period or any applicable Extended Reporting Period we provide.

(Doc. 1-1, p. 14; p. 71) (Section I Coverage, 1. Insuring Agreement, A. Excess Liability, 1. (e)&(f)).

The Insuring Agreement further states:

> 2. The terms, conditions, definitions, exclusions and endorsements of the controlling underlying insurance are made a part of our policy, unless a more restrictive provision is contained in or endorsed to our policy.

(Id.) ("Section I – Coverage" 1. Insuring Agreement, A. Excess Liability, 2.).

Section V of the Navigators policies contain a notice provision, "Condition 6", which states in relevant part, as follows:

> 6. Duties When There is an Occurrence, Claim or Suit

a. You must see to it that we are notified as soon as practicable of any occurrence which may result in a claim under this policy. You shall also provide other claim information or reports as reasonably requested by us from time to time.  . . .

b. If a claim is made or suit is brought against any insured which may be reasonably expected to result in a claim under this policy, you must:

     i. immediately record the specifics of the claim or suit and the date received; and

     ii. notify us, and any other insurers who could be obligated to provide coverage, as soon as practicable.

c. You and any other involved insured must:

     i. immediately send us, and any other insurers who could provide coverage, copies of any demands, notices, summonses or legal papers received in connection with a claim or suit which may be reasonably expected to result in a claim under this policy; . . .

(Doc. 1-1, p. 18; p. 75).

The introductory paragraph to Section V states as follows:

The CONDITIONS sections of the controlling underlying insurance are made part of this policy. If an inconsistency or contradiction exists between the Conditions of this policy and the Conditions of the controlling underlying insurance, the Conditions of this policy will apply. Other than as to Limits of Insurance, in no event shall this policy grant broader coverage than would be provided by the controlling underlying insurance.

(Doc. 1-1, p. 17; p. 74) ("Section V – Conditions").

2. The Ironshore policy

Pursuant to the policies for 2016-2017 and 2017-2018, Ironshore provided coverage and a defense[5] for products liability claims made against KVK during the policy period and reported

---

[5] Insuring Agreement G obligates Ironshore to extend coverage to "Defense Expenses" for claims covered under Insuring Agreement A (doc. 1-1, p. 33).

to Ironshore in accordance with the Ironshore Policies. Ironshore concluded that all of the opioid lawsuits were a single claim made when the July 22, 2016 to August 21, 2017 policy was in force. Specifically, Section I, captioned "Insuring Agreements" provides in relevant part:

A. PRODUCTS/COMPLETED OPERATIONS BODILY INJURY AND PROPERTY DAMAGE LIABILITY INSURANCE

We will pay Damages that the Insured becomes legally obligated to pay because of a Claim alleging Bodily Injury or Property Damage caused by an Occurrence, provided that:

1. the Bodily Injury or Property Damage is included within the Products-Completed Operations Hazard to which this insurance applies;

[and] …

4. the Claim was first made against the Insured during the Policy Period or any applicable Extended Reporting Period, and was reported to us as required by SECTION V, Condition A. A Claim will be deemed first made as set forth in SECTION V, Condition B.

(Doc. 1-1, p. 31, Insuring Agreement A).

Section V, Condition A, states as follows:

2. Notice of Claim (Including a Suit)

a. As a condition precedent to any right to coverage under this Policy, you must give us written notice of any Claim (including any Suit) first made against any Insured during the Policy Period or any applicable Extended Reporting Period as soon as practicable thereafter, but in no event later than:

(i) with respect to a Claim first made during the Policy Period, thirty (30) days after the Policy expiration date; or

(ii) with respect to a Claim first made during an Extended Reporting Period, thirty (30) days after such Claim is first made.

b. You and any other involved Insured must also:

(i) immediately send us copies of any demands, notices, summonses or legal
papers received in connection with the Claim or Suit;

(Doc. 1-1, p. 44-45).

Section V, Condition B, captioned in part "Claim Made Date", states that "[a] Claim will
be deemed to have been made at the earlier of the following times: 1. when any Executive
Officer, member of your legal or risk management departments or any other person responsible
for your insurance administration first receives written notice of such Claim; or 2. when we
receive written notice of such Claim." (doc. 1-1, p. 45).   By way of Endorsement No. 4,
Condition B is amended to further provide that all claims "attributable to the same actual or
alleged event, condition, cause, … regardless of when and where injury occurs or the number of"
injuries will be deemed to be "one Claim and one Occurrence" and deemed as made at the time
the first claim is made, i.e., a "Batch Occurrence"  (Doc. 1-1, p. 63) (Batch Occurrence
Endorsement).

C. Standard of review

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are
closed--but early enough not to delay trial--a party may move for judgment on the pleadings."
The pleadings are closed for purposes of Rule 12(c), "when a complaint and answer have been
filed." Lillian B. ex rel. Brown v. Gwinnett Cty. Sch. Dist., 631 Fed. Appx. 851, 853 (11th Cir.
2015).   A Rule 12(c) motion "provides 'a means of disposing of cases when ... a judgment on
the merits can be achieved by focusing on the content of the competing pleadings....'" Perez v.
Wells Fargo N.A., 774 F.3d 1329, 1336 (11th Cir. 2014) (quoting 5C Charles Alan Wright &
Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed.2004) (emphasis in original).

In "determining whether a party is entitled to judgment on the pleadings, we accept as
true all material facts alleged in the non-moving party's pleading, and we view those facts in the

light most favorable to the non-moving party." <u>Perez</u>, 774 F.3d at 1335.  Thus, the Court must accept as true the material facts alleged by KVK in their answer, and view those in the light most favorable to them. "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." <u>Id</u>.  When the Rule 12(c) motion "is filed by the plaintiff,[6] a critical question is whether the defendants' answer raises issues of fact that would defeat the plaintiff's recovery." <u>Volvo Financial Services v. JRD Contracting, Inc.,</u> 2017 WL 8941065, *3 (S.D. Ala. July 7, 2017) (citing G<u>erlinger v. Amazon.Com, Inc.,</u> 311 F. Supp.2d 838, 843 (N.D. Cal. 2004) ("A plaintiff is not entitled to judgment on the pleadings if the defendant's answer raises issues of fact or an affirmative defense, which, if proved, would defeat plaintiff's recovery.")).

Generally, the Court may not consider matters outside the pleadings without converting the motion into a motion for summary judgment. Fed. R. Civ. P. 12(d).  However, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Also, the Court may consider documents attached to an answer if they are "(1) central to the Plaintiff's claim; and (2) undisputed, which "in this context means that the authenticity of the document is not challenged." <u>Horsley v. Feldt,</u> 304 F.3d 1125, 1134 (11th Cir. 2002).

D. <u>Statement of the law</u>

"[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." <u>Manuel v. Convergys Corp</u>., 430 F.3d 1132, 1139 (11th Cir. 2005).  In that regard, "Alabama follows the principle of 'lex loci contractus' which states that a contract is governed by the laws of the state where it is made

---

[6] Navigators filed this motion in their capacity as Counter-Plaintiff.

except where the parties have legally contracted with reference to the laws of another jurisdiction." <u>Cherry, Bekaert & Holland v. Brown</u>, 582 So. 2d 502, 506 (Ala. 1991). The policies at issue do not contain a choice of law provision. Thus, "Alabama law requires the application of the law of the state wherein the contract was executed." <u>Category 5 Mgmt. Grp., LLC v. Nat'l Cas. Ins. Co.</u>, 480 Fed. Appx. 536, 538 (11th Cir. 2012) (citing <u>Pines v. Warnaco, Inc.</u>, 706 F.2d 1173, 1176 n. 3 (11th Cir.1983) (citing Harrison v. Ins. Co. of N. Am., 294 Ala. 387, 318 So.2d 253, 257 (1975))). The parties do not dispute that the policies were delivered to KVK in Pennsylvania (doc. 17, p. 2; doc. 24, p. 7). Therefore, the "last act of execution, the receipt and acceptance" of the Navigators policies occurred in Pennsylvania. <u>Category 5 Mgmt. Grp., LLC</u>, 480 Fed. Appx. at 538 (citing <u>Indus. Chem. & Fiberglass v. N. River Ins. Co.</u>, 908 F.2d 825, 829 n. 3 (11th Cir.1990)).

The Supreme Court of Pennsylvania recently set forth as follows:

> In interpreting the relevant provisions of the insurance policies at issue in this appeal, we are guided by the polestar principle that insurance policies are contracts between an insurer and a policyholder. <u>Gallagher v. GEICO Indemnity Company</u>, 650 Pa. 600, 201 A.3d. 131, 137 (2013). Thus, we apply traditional principles of contract interpretation in ascertaining the meaning of the terms used therein. <u>Id.</u> This requires our Court to effectuate the intent of the contracting parties as reflected by the written language of the insurance policies. <u>American and Foreign Insurance Company v. Jerry's Sport Center</u>, 606 Pa. 584, 2 A.3d 526, 540 (2010). In this regard, the language of the policy must be considered in its entirety. <u>Pennsylvania National Mutual Casualty Insurance v. St. John</u>, 630 Pa. 1, 106 A.3d 1, 14 (2014).

> If policy terms are clear and unambiguous, then we will give those terms their plain and ordinary meaning, unless they violate a clearly established public policy. <u>AAA Mid-Atlantic Insurance Company v. Ryan</u>, 624 Pa. 93, 84 A.3d 626, 633-34 (2014). Conversely, when a provision of a policy is ambiguous, the policy provision is to be construed in favor of the policyholder and against the insurer, as the insurer drafted the policy and selected the language which was used therein. <u>Prudential Property & Casualty Insurance Company v. Sartno</u>, 588 Pa. 205, 903

A.2d 1170, 1177 (2006). Policy terms are ambiguous "if they are subject to more than one reasonable interpretation when applied to a particular set of facts." Madison Construction Company v. Harleysville Mutual Insurance Company, 557 Pa. 595, 735 A.2d 100, 106 (1999).

Kurach v. Truck Ins. Exch., 235 A.3d 1106, 1116 (Pa. 2020) (footnote omitted).

Also, under Pennsylvania law, "in close cases, a court should resolve the meaning of insurance policy provisions in favor of coverage for the insured." General Refractories Co. v. First State Insurance Co., 94 F. Supp. 3d 649, 657-658 (E.D. Pa. 2015) (citation omitted). And, if there is more than one reasonable construction, "the construction that favors coverage must be applied." Id. (citation omitted).

"[T]he question of whether a particular contract provision is ambiguous is a matter of law[.]" Id., at n.11 (citing Kripp v. Kripp, 578 Pa. 82, 849 A.2d 1159, 1164 n.5 (2004)). "The insured bears the initial burden of showing that its claims are 'within the policy's affirmative grant of coverage.'" Greenwood Racing, Inc., et al., v. Amer. Guarantee & Liability, Ins. Co., 2021 WL 5050087, at *3 (E.D. Pa. Nov. 1, 2021) (citing Sciolla v. W. Bend Mut. Ins. Co., 987 F. Supp. 2d 594, 599 (E.D. Pa. 2013) (quoting Koppers Co. v. Aetna Cas. & Sur. Co., 98 F.3d 1440, 1446 (3d Cir. 1996))).

E.   Analysis

Navigator now moves for judgment on the pleadings. The Court is limited to review of the alleged facts in the pleadings and properly attached documents. The Court has reviewed the allegations in KVK's complaint and answers and Navigators' answers and counterclaim. Accepting as true the material facts alleged in KVK's complaint and admitted in the answers and viewing those facts in the light most favorable to KVK, there are no material facts in dispute that preclude judgment on the pleadings for Navigators.

Navigators also alleges it is not obligated to provide coverage to KVK for the opioid lawsuits since it did not receive notice of the opioid lawsuits from KVK in a timely fashion. (doc. 3, p. 3; doc. 17, p. 13). Specifically, Navigators asserts that KVK's failure to provide notice during the policy period, or in the alternative as soon as practicable bars KVK from obtaining coverage under the policy for the opioid lawsuits (Id.).

Navigators' insurance is only available to KVK if: 1) the claim is first made during the policy period and; 2) the claim is reported to Navigators during the policy period or any applicable Extended Reporting Period Navigators provide.

Navigators does not define when a claim is first made, but instead incorporates Ironshore's definition.  Under Ironshore's policy a claim is first made the earlier of when KVK received written notice of the claim (KVK's pleadings indicate service of the Hughes complaint to be August 31, 2017) or when Ironshore received written notice of the claim (the pleadings indicate that KVK noticed Ironshore on August 24, 2017 of the Hughes complaint, but does not specify that it was written notice).  Thus, the claim on the Hughes complaint was first made either August 24, 2017 or August 31, 2017.   Both dates fall within Navigator's 2017-2018 policy period.[7]

Next, the claim must be reported to Navigators as soon as practicable, but at least during the policy period or any applicable extended reporting period Navigators provides.  Section VI of

---

[7] The Ironshore policy is inconsistent to the extent that it provides that claims made during the extended reporting period (30 day after the Policy expiration date of August 21, 2017) are considered claims made during the 2016-2017 policy period.  In other words, the policy periods are inconsistent.   However, whether "the underlying policy term overlaps with the excess policy's coverage period, is incidental for follow-form purposes."  Mine Safety Appliances Co. v. AIU Ins. Co., 2015 WL 5829461, at *2 (Del. Super. Ct. Aug. 10, 2015) (applying Pennsylvania law).

the Navigators policy states that "[w]hen an Extended Reporting Period applies to the controlling underlying insurance without a premium charge, an Extended Reporting Period will also apply to this policy <u>for the period provided by the controlling underlying insurance</u>" (doc. 1-1, p. 21) (emphasis added).  Ironshore provides 30 additional days to report the claim after the expiration of the policy.  Thus, KVK had 30 days from the expiration of the Navigators' policy on August 21, 2018, i.e. September 20, 2018, to report the claim to Navigators.  KVK provided notice of and made a claim to Navigators on January 27, 2020.

Moreover, KVK did not notify Navigators of the opioid lawsuits "as soon as practicable." KVK notified their other excess insurance carriers of the opioid lawsuits on June 25, 2019 (doc. 3-15).  Thus, it was clearly practicable for KVK to notify Navigators of the opioid lawsuits significantly earlier than they did, meaning KVK failed to notify Navigators "as soon as practicable." Accordingly, KVK failed to satisfy the notice requirements.

Last, the Court finds KVK's argument that the notice requirements only preclude coverage if Navigators was prejudiced by late notice to be without merit.  "Pennsylvania law does not require an insurer to demonstrate prejudice when the relevant notice provision is contained in a claims-made policy like the one before us." <u>Am. Guarantee & Liab. Ins. Co. v. L. Offs. of Richard C. Weisberg</u>, 524 F. Supp. 3d 430, 455 (E.D. Pa. 2021).  The district court also found after an examination of Pennsylvania law that "the Pennsylvania Supreme Court would not extend the notice-prejudice rule to a prompt notice provision in a claims-made policy." <u>Id</u>. at 446-447. This Court agrees.

**D.   <u>Conclusion</u>**

Upon consideration of the motion, response, reply and exhibits, and supplemental briefs, and for the reasons set forth herein, Navigators' motion for judgment on the pleadings is GRANTED.  Navigators is not obligated to provide excess insurance coverage under the policy to KVK for the opioid lawsuits.

Final judgment shall be entered by separate order as provided in Rule 58 of the Federal Rules of Civil Procedure.

DONE and ORDERED this the 23rd day of December 2021.


 s / Kristi K DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE